United States District Court
Northern District of California

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| **LATARA BIAS,** *et al.*, | Case No.: 12-cv-00664 YGR |
| Plaintiffs, | **ORDER GRANTING IN PART PLAINTIFFS' MOTION FOR CLASS CERTIFICATION** |
| vs. | Re: Dkt. Nos. 164, 192 |
| **WELLS FARGO & COMPANY,** *et al.*, | |
| Defendants. | |

Before the Court is plaintiffs Latara Bias, Eric Breaux, and Troy Morrison's (collectively, "Plaintiffs") motion for class certification. (Dkt. No. 164, "Mtn.")[1] Having carefully considered the papers submitted and the pleadings in this action, oral argument held on September 29, 2015, and for the reasons set forth below, the Court hereby **GRANTS IN PART** Plaintiffs' motion.

## I.     FACTUAL BACKGROUND

Defendants Wells Fargo & Company and Wells Fargo Bank, N.A. (collectively, "Defendants" or "Wells Fargo") service home mortgage loans.  In this role, Defendants are responsible for providing certain services to protect a mortgage lenders' interest in the property securing the loan.  Among those services are Broker's Price Opinions ("BPOs"), which are informal appraisals that Wells Fargo ordered when borrowers went into default on their loans. (Dkt. 176-1 ¶ 4.)  In approximately 2001, Wells Fargo began ordering BPOs through an internal group named Premiere Asset Services ("PAS").  (*Id.* ¶ 9.)  Wells Fargo would then charge borrowers for the BPO in an amount greater than the amount PAS paid to a third party broker for the raw opinion.  (*See* Dkt. No. 185-2, "Supp. Pifko Decl.," Exh. 37 at 315; *id.*, Exh. 38 at 321; *id.*, Exh. 42 at 358.)  Said otherwise, Wells Fargo added a mark-up to the BPO cost, above the amount PAS spent on the service, which it then charged borrowers.  BPO valuation services had a mark-

---

[1] The Court resolves the four administrative motions to seal documents submitted in connection with the substantive motion via separate order entered this date.

up of between $25 and $40 per service over the class period.  (Supp. Pifko Decl., Exh. 37 at 315.)
At all relevant times, BPO charges assessed to borrowers' accounts were not reflected on the
borrower's monthly mortgage statement.   (Dkt. No. 164-2, "Pifko Decl.," Exh. 22 at 146-48.)
Wells Fargo ceased its practice of using PAS to perform BPOs and marking up BPO charges in
July 2010.  (*Id.*, Exh. 13 at 37.)

Wells Fargo serviced the mortgages of named Plaintiffs, who now challenge Defendants'
practice of charging borrowers for BPO costs without disclosing the marked-up nature of same.

**II.      PLAINTIFFS' PROPOSED CLASS DEFINITIONS AND CLAIMS**

Plaintiffs move to certify two nationwide classes:

> **1.  Assessed Class**
> All residents of the United States of America who had a loan
> serviced by Wells Fargo Bank, N.A. or its subsidiaries or divisions,
> and whose mortgage accounts were assessed, but who have not
> paid, for one or more Broker's Price Opinions charged by Wells
> Fargo, through PAS, from January 1, 2002 through July 1, 2010.
>
> **2.  Paid Class**
> All residents of the United States of America who had a loan
> serviced by Wells Fargo Bank, N.A. or its subsidiaries or divisions,
> and who paid for one or more Broker's Price Opinions charged by
> Wells Fargo, through PAS, from January 1, 2002 through July 1,
> 2010.

(Mtn. at 6.)  Plaintiffs seek to certify the Assessed Class as an injunctive relief class pursuant to
Federal Rule of Civil Procedure 23(b)(2), and the Paid Class as a damages class pursuant to Rule
23(b)(3).  The Assessed Class seeks injunctive relief under California's Unfair Competition Law
("UCL") only.  By contrast, the Paid Class asserts four separate claims for relief.  Plaintiffs seek to
recover damages on behalf of the Paid Class for: (1) unjust enrichment under the laws of the fifty
states; (2) violation of the civil RICO statute, specifically 18 U.S.C. section 1962(c); (3) fraud
under California law; and (4) violation of the UCL.

**III.      CHOICE OF LAW ANALYSIS**

Plaintiffs, who are all residents of Louisiana, ask the Court to apply California law to their
claims as well as those of a nationwide class.  Thus, the Court must first determine whether
California law – the UCL and California's law of fraud – can be applied to the claims of the

2

United States District Court
Northern District of California

named Plaintiffs.  The Court previously found that the choice of law analysis as announced by the California Supreme Court in *Nedlloyd Lines B.V. v. Sup. Ct.*, 3 Cal.4th 459, 465-66 (1992) applies in this case.  *See Bias v. Wells Fargo & Co.*, 942 F.Supp.2d 915, 928-29 (N.D.Cal. 2013).  Applying the *Nedlloyd* test, the Court earlier determined that the choice of law provision in Plaintiffs' mortgages choosing Louisiana law applies to Plaintiffs' claims, and that Louisiana has a substantial relationship to these claims.  *Id.*  However, at the motion to dismiss stage, the Court declined to address the final step in the *Nedlloyd* analysis, or "whether the chosen state's law is contrary to a *fundamental* policy of California" and, if contrary, which state has a "materially greater interest" in determining the particular issue.  *Id.* (quoting *Washington Mutual Bank, FA v. Sup. Ct.*, 24 Cal.4th 906, 918-19 (2001)) (emphasis in original).  Because choice of law considerations are "better suited for determination at the class certification stage," the Court previously declined to hold that Plaintiffs could not proceed under the UCL.  *Id.* at 930.  With the benefit of discovery and a more fully developed record, the Court now finds that Plaintiffs have not met their burden to establish that California law should apply pursuant to *Nedlloyd*.

The third step in the *Nedlloyd* analysis requires the Court to first determine whether Louisiana's laws of unfair competition and fraud are contrary to a fundamental California policy.  *See Nedlloyd*, 3 Cal.4th at 466.  Absent such a conflict, the Court cannot disregard the parties' decision to have Louisiana law apply to these claims.  *Id.*  It is Plaintiffs' burden to establish "that the chosen law is contrary to a fundamental policy of California," and if so proven, "that California has a materially greater interest in the determination of the particular issue."  *Washington Mutual*, 24 Cal.4th at 917.  Plaintiffs have failed to make the preliminary showing that Louisiana law is contrary to a fundamental policy of California.  Plaintiffs' argument that the limitations Louisiana places on class actions based on common law claims are contrary to California's broad recognition of class action remedies does not persuade.  First, the UCL is not a common law claim.  Second, Plaintiffs do not cite any particular conflicts between Louisiana's and California's laws of fraud.  Thus, the Court finds that the choice-of-law provisions in Plaintiffs' contracts should be enforced, barring them from bringing claims under California law.  *See Gustafson v. BAC Home Loans Servicing, LP*, 294 F.R.D. 529, 537 (C.D.Cal. 2013) (finding

United States District Court
Northern District of California

1 | that the same choice-of-law mortgage provision in putative class members' contracts controlled,

2 | barring a class claim under the UCL); *Nat'l Seating & Mobility, Inc. v. Parry*, 2012 WL 2911923,

3 | at *5 (N.D.Cal. July 16, 2012) (denying class certification of a UCL claim where choice-of-law

4 | provisions in the parties' contracts designated Tennessee law as the governing law).

5 |       Thus, California's UCL and law of fraud cannot apply to the claims of the named

6 | Plaintiffs, whose contracts provide that the laws of Louisiana govern.  Accordingly, the request to

7 | certify the Assessed Class which solely brings a UCL claim is **DENIED**.[2]  The request to certify the

8 | Paid Class to bring the third claim for fraud and fourth claim under the UCL is similarly **DENIED**.

9 | **IV.**    **LEGAL STANDARD FOR CLASS CERTIFICATION**

10 |       Rule 23, which governs class certification, contains two sets of distinct requirements

11 | Plaintiffs must meet before the Court may certify either class.  First, Plaintiffs must meet all of the

12 | requirements under Rule 23(a).  Second, each class must meet at least one of the prongs of Rule

13 | 23(b), depending on the nature of the class.

14 |       Under Rule 23(a), the Court may certify a class only where "(1) the class is so numerous

15 | that joinder of all members is impracticable; (2) there are questions of law or fact common to the

16 | class; (3) the claims or defenses of the representative parties are typical of the claims or defenses

---

[2] Should Plaintiffs propose an alternative basis for injunctive relief, the Court cautions Plaintiffs that at least two substantial hurdles to certification of the Assessed Class would remain. First, Plaintiffs ask this Court to represent a class of persons whose accounts were assessed for a BPO, but who never paid for the assessed BPO charge, *i.e.*, the Assessed Class.  Plaintiffs, however, present the Court with no evidence that they themselves would be members – much less appropriate representatives – of the Assessed Class.  In other words, none of the evidence before the Court establishes that a named Plaintiff meets the proposed definition for the Assessed Class. It is axiomatic that, to certify a class, the Court must be satisfied that a named Plaintiff is a member of the proposed class.  *Falcon*, 457 U.S. at 156 ("we have repeatedly held that 'a class representative must be a part of the class'") (quoting *East Texas Motor Freight System, Inc. v. Rodriguez*, 431 U.S. 395, 403 (1977)).

Second, as Plaintiffs' counsel conceded at oral argument, it is not clear that the currently named Plaintiffs could benefit from any injunctive relief.  (*See* Dkt. No. 197 at 26:25-27:13.) While the Assessed Class would ultimately seek injunctive relief directing defendants to "reverse or waive" all charges for BPOs previously assessed to their accounts, the Court understands that none of the named Plaintiffs continues to have a mortgage serviced by Defendants.  (*See id.* at 26:20-27:13.)  Plaintiffs would therefore have to show standing to pursue injunctive relief to reverse or waive charges on a closed account.  *See Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009) (a named plaintiff "bears the burden of showing that he has standing for each type of relief sought") (emphasis supplied); *Bates v. United Parcel Serv., Inc.*, 511 F.3d 974, 985 (9th Cir. 2007) (noting that at least one named plaintiff must have Article III standing).

1    of the class; and (4) the representative parties will fairly and adequately protect the interests of the

2    class." Fed.R.Civ.P. 23(a).  Courts refer to these four requirements as "numerosity, commonality,

3    typicality and adequacy of representation."  *Mazza v. Am. Honda Motor Co., Inc.*, 666 F.3d 581,

4    588 (9th Cir. 2012).

5           In addition to the four requirements set forth in Rule 23(a), most courts have implied an

6    additional threshold requirement: that the members of the class are readily ascertainable.  *See*

7    *Xavier v. Philip Morris USA, Inc.*, 787 F.Supp.2d 1075, 1089 (N.D.Cal. 2011) ("the party seeking

8    certification must demonstrate that an identifiable and ascertainable class exists"); *Herrera v. LCS*

9    *Fin. Servs. Corp.*, 274 F.R.D. 666. 672 (N.D.Cal. 2011).  "While Rule 23(a) does not expressly

10   require a class to be ascertainable, courts have read the rule to imply th[e] requirement … [that] its

11   members  can be ascertained by reference to objective criteria … [and] the description of the class

12   is definite enough so that it is administratively feasible for the court to ascertain whether an

13   individual is a member."  *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 267 F.R.D. 291, 299

14   (N.D.Cal. 2010) (internal citations and quotations omitted), *abrogated on other grounds by In re*

15   *ATM Fee Antitrust Litig.*, 686 F.3d 741 (9th Cir. 2012).

16          Once Plaintiffs establish that the threshold requirements of Rule 23(a) are met, Plaintiffs

17   must then show "through evidentiary proof" that a class is appropriate for certification under one

18   of the provisions in Rule 23(b).  *Comcast Corp. v. Behrend*, 133 S.Ct. 1426, 1432 (2013).  For the

19   Paid Class, Rule 23(b)(3) requires Plaintiffs to establish "that the questions of law or fact common

20   to class members predominate over any questions affecting only individual members, and that a

21   class action is superior to other available methods for fairly and efficiently adjudicating the

22   controversy." Fed.R.Civ.P. 23(b)(3).  The shared legal or factual issues must be of sufficient

23   importance to the case that the Court is convinced that the most efficient, fair, and sensible method

24   of adjudication is through a class action.  CAL. PRAC. GUIDE FED. CIV. PRO. BEFORE TRIAL Ch. 10-

25   C § 10:274 (citing *Califano v. Yamasaki*, 442 U.S. 682, 701 (1979)).  Therefore, the predominance

26   inquiry focuses on "whether proposed classes are sufficiently cohesive to warrant adjudication by

27   representation." *Hanlon. v. Chrysler Corp.*, 150 F.3d 1011, 1022 (9th Cir. 1998) (quoting

28   *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 623 (1997) (internal quotation marks omitted)).

Where questions common to class members represent significant issues that can be resolved in a single adjudication, "there is clear justification for handling the dispute on a representative rather than on an individual basis." *Id.* (internal quotation marks and citation omitted).

"[A] court's class-certification analysis must be 'rigorous' and may 'entail some overlap with the merits of the plaintiff's underlying claim.'" *Amgen Inc. v. Conn. Ret. Plans & Trust Funds*, 133 S.Ct. 1184, 1194 (2013) (quoting *Wal-Mart Stores, Inc. v. Dukes*, 131 S.Ct. 2541, 2551 (2011)); *see also Mazza*, 666 F.3d at 588.  The Court considers the merits to the extent that they overlap with the Rule 23 requirements.  *Ellis v. Costco Wholesale Corp.*, 657 F.3d 970, 983 (9th Cir. 2011).  The Court must resolve factual disputes to the extent "necessary to determine whether there was a common pattern and practice that could affect the class *as a whole*." *Id.* (emphasis in original).  "When resolving such factual disputes in the context of a motion for class certification, district courts must consider 'the persuasiveness of the evidence presented.'" *Aburto v. Verizon Cal., Inc.*, 2012 WL 10381, at *2 (C.D. Cal. Jan. 3, 2012) (quoting *Ellis*, 657 F.3d at 982).  Ultimately, the district court must exercise its discretion to determine whether a class should be certified.  *Califano v. Yamasaki*, 442 U.S. 682, 703 (1979).

## V.   DISCUSSION

With the exception of numerosity, Wells Fargo argues that Plaintiffs have failed to meet their burden with respect to all class certification requirements.  Given the Court's rulings *infra*, the class certification analysis proceeds as to the Paid Class only on the first claim for unjust enrichment and the second claim for civil RICO.  The Court addresses the Rule 23(a) factors, the additional threshold requirement of ascertainability, as well as the Rule 23(b)(3) factors, with respect to the Paid Class in turn below.

### A.  Rule 23(a) Requirements

#### 1.  Numerosity

The numerosity requirement under Rule 23(a)(1) is undoubtedly met here and Defendants do not contend otherwise.  Plaintiffs submit that more than half a million BPO charges were assessed to borrowers' accounts by Defendants and subsequently paid by borrowers.  (Pifko Decl., Exh. 17 at 98.)  As a proposed nationwide class with potentially hundreds of thousands of class

6

members residing in fifty states, the Court agrees that numerosity is satisfied.

### 2. Commonality

Rule 23(a)(2) requires that the party seeking certification show that "there are questions of law or fact common to the class." Fed.R.Civ.P. 23(a)(2). To satisfy this requirement, a common question "must be of such a nature that it is capable of class-wide resolution – which means that the determination of its truth or falsity will resolve an issue that is central to the validity of each of the claims in one stroke." *Dukes*, 131 S.Ct. at 2545. The existence of common questions itself will not satisfy the commonality requirement, and instead, "[w]hat matters to class certification … is… the capacity of a classwide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Id.* at 2551. Under the commonality inquiry, "Plaintiffs need not show that every question in the case, or even a preponderance of questions, is capable of classwide resolution. So long as there is 'even a single common question,' a would-be class can satisfy the commonality requirement of Rule 23(a)(2)." *Wang v. Chinese Daily News, Inc.*, 737 F.3d 538, 544 (9th Cir. 2013) (quoting *Dukes*, 131 S.Ct. at 2556).

Here, Plaintiffs propose two commons questions as suitable for determination on a classwide basis. The first, as framed by Plaintiffs, is whether it was unlawful for defendants to charge borrowers for BPOs that were "marked up" above the amount Wells Fargo (through PAS) paid third party vendors to perform the BPOs – without disclosing the mark-up to borrowers. Wells Fargo does not contest that this fundamental *question* is common to all class members. Rather, Defendants argue that there is not common *evidence* that can be used to reach a common *answer*. Defendants raise two reasons why common evidence cannot be used in this case to prove whether the BPO charges were unlawfully marked up on a classwide basis. Namely, Wells Fargo argues that Plaintiffs have failed to establish that either: (i) the BPO charges were consistently marked up; or (ii) class members were subject to the same mortgage terms governing Defendants' conduct. The Court addresses each of Defendants' arguments in turn.

First, Wells Fargo argues that Plaintiffs have not satisfied their burden to show that the mark-ups can be proven with common evidence because some fees were not marked up at all, and because the amount of the mark-up varied. With respect to the existence of a mark-up, Plaintiffs

United States District Court
Northern District of California

point to Defendants' 30(b)(6) witness's testimony that BPO "pricing was consistent across – across time…it was [\$125] until…the price changed…to \$95." (Supp. Pifko Decl., Exh. 38 at 321.) Moreover, an email from Wells Fargo Senior Vice President James Taylor states that the BPO valuation services had a "mark-up of \$25 to \$40 per service, and the gross fees vary by client but general priced as follows: Drive-By BPO \$95 [and] Interior BPO \$125." (*Id*., Exh. 37 at 315.) Defendants' expert, George T. Schwartz, likewise stated in his report that it was his understanding that PAS charged \$125 for exterior BPOs from 2002 through 2005, and \$95 from 2006 through June 2010. (*Id*., Exh. 42 at 358.) This *common evidence*, applicable classwide, supports Plaintiffs' theory that Defendants charged borrowers a uniform cost for BPOs without regard to the actual amount it paid a third party for the service. In opposition, Defendants point to testimony that "some BPO fees…were equal to the amount…paid" by defendants. (Dkt. No. 176-6, "Tiska Decl.," ¶ 8.) That there may have been instances in which the rule did not result in a mark-up, however, does not defeat commonality. Plaintiffs presented sufficient evidence of a common practice by Wells Fargo. Nothing more is required at this stage. *See Dukes*, 131 S.Ct. at 2551. To the extent the proposed class definition would include those borrowers who paid a BPO fee that did not include a mark-up, however, the Court finds that the class must be narrowed. A borrower who paid a BPO fee that did not include a mark-up necessarily was not subject to the common practice at issue. The Paid Class definition will be so tailored.

Wells Fargo also argues that variation in the amount of the mark-ups across the class should defeat commonality. This argument does not persuade. Principally, Wells Fargo does not articulate why the size of the mark-up is relevant to the commonality analysis. Defendants seem to misconstrue Plaintiffs' theory of liability. Under Plaintiffs' theory of their case, it is the *existence* of the mark-up, and not its *amount*, which is determinative of Defendants' liability. Furthermore, Plaintiffs seek to recover the entire amount of the BPO charge paid by class members and not just the amount of the mark-up. Wells Fargo counters that Plaintiffs are only entitled to the amount of the mark-up should they prevail on liability. Even assuming, *arguendo*, that Wells Fargo is correct and Plaintiffs' damages are limited to the amount of the mark-up, the Court cannot decline to certify a class simply because the damages inquiry will be individualized.

1   *Leyva v. Medline Industries, Inc.*, 716 F.3d 510, 514 (9th Cir. 2013).  The Ninth Circuit explicitly

2   instructs that "[t]he potential existence of individualized damages assessments…does not detract

3   from the action's suitability for class certification."  *Yokoyama v. Midland Nat'l Life Ins. Co.*, 594

4   F.3d 1087, 1089 (9th Cir. 2010).  Accordingly, "damage calculations alone cannot defeat

5   certification."  *Id*. at 1094.  "[T]he amount of damages is invariably an individual question and

6   does not defeat class action treatment."  *Leyva*, 716 F.3d at 514 (quoting *Blackie v. Barrack*, 524

7   F.2d 891, 905 (9th Cir. 1975).  Thus, any variation in the amount of the BPO charge mark-up

8   across the class does not detract from the common question of liability to be adjudicated on a

9   classwide basis.

10          Second, Wells Fargo points to variations in mortgage terms nationwide and across time to

11   argue that Plaintiffs have not shown that defendants' conduct was governed by uniform

12   contractual (mortgage) terms.  Indeed, Wells Fargo serviced "loans secured by a wide variety of

13   mortgages…[including] Fannie Mae/Freddie Mac mortgages" in addition to "mortgages

14   documented on FHA or Veterans Affairs forms, or other less common mortgages."  (Oppo. at

15   9:13-16; Dkt. No. 176-1, "Jones Decl.," ¶¶ 17, 20.)  Defendants point to several variations among

16   mortgage forms to argue that not all class members signed mortgages "with the same material

17   provisions."  (*Id*. at 10:11-12.)  Critically, though, Wells Fargo does not identify any provision in

18   any of the numerous mortgage forms it puts in front of the Court that would authorize a mortgage

19   servicer to charge borrowers an *undisclosed* mark-up on the BPO fee.  Nor does Wells Fargo

20   claim that it varied its behavior based on the operative mortgage language.  As a result, Wells

21   Fargo fails to explain how variations in contract language would negate the liability determination.

22          Wells Fargo cites several cases denying class certification of nationwide mortgagor classes

23   in support of their argument.  Again, Defendants' reliance on these cases disregards Plaintiffs'

24   theory of liability.  Each of the cases cited by Wells Fargo involved putative classes asserting

25   claims for breach of contract.  And, certification was denied in whole or in part due to specific

26   variations in mortgage contracts that were material in the context of that case.  For example, in

27   *Gustafson v. BAC Home Loans Servicing, LP*, the court denied certification of a class of

28   nationwide mortgagors because the "mortgage contracts at issue…containe[ed] numerous material

variations of the provision that serves as the basis for Plaintiffs' breach of contract claim."  294

F.R.D. 529, 542 (C.D.Cal. 2013).  Similarly, in a case involving defendant Wells Fargo Bank,

N.A. in this District, Judge Alsup limited a class seeking to recover under a breach of contract

claim to only those with the same mortgage form of the representative plaintiff.  *See Lane v. Wells

Fargo Bank, N.A.*, 2013 WL 3187410, at *6 (N.D.Cal. June 21, 2013).  Unlike the plaintiffs in

*Gustafson* and *Lane*, Plaintiffs here bring a RICO claim sounding in fraud,[3] independent of any

particular mortgage contract language.  Variations in contract language, especially in the absence

of a showing of materiality, do not preclude Plaintiffs from proving that Wells Fargo's conduct

constituted a fraudulent scheme on a classwide basis.

Finally, Plaintiffs suggest a second common question with respect to the liability of each

Wells Fargo entity.  Specifically, Plaintiffs point to whether the two defendant entities – Wells

Fargo & Company and Wells Fargo, N.A. – can each be held liable for the conduct of marking up

the BPO charges.  Plaintiffs argue that because this question focuses on the actions of Defendants

and does not vary by class member it is amenable to classwide determination.  The Court agrees.

Although it is not clear that this is the sort of question that would ultimately drive the resolution of

the litigation and support commonality on its own, it does lend further support to the Court's

conclusion that commonality is met here.

For the foregoing reasons, the Court finds that Plaintiffs have satisfied the commonality

inquiry for the Paid Class, properly narrowed to include only those borrowers who paid a BPO

charge in an amount greater than the amount Wells Fargo (through PAS) paid a third party vendor.

### 3.  Typicality

To satisfy typicality, Plaintiffs must establish that the "claims or defenses of the

representative parties are typical of the claims or defenses of the class."  Fed.R.Civ.P. 23(a)(3).

"The purpose of the typicality requirement is to assure that the interest of the named representative

---

[3] For the reasons discussed in Section III, *supra*, the Paid Class cannot bring UCL or California fraud claims on behalf of a nationwide class as proposed. Similarly, for the reasons discussed in Section V(D)(1)(a), *infra*, the Court finds that the Paid Class cannot seek relief under a theory of unjust enrichment for borrowers nationwide.  Because those claims otherwise are not entitled to be certified, the Court declines to address them in the context of commonality under Rule 23(a)(2).

United States District Court
Northern District of California

aligns with the interests of the class." *Wolin v. Jaguar Land Rover N. Am., LLC*, 617 F.3d 1168, 1175 (9th Cir. 2010) (quoting *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 508 (9th Cir.1992)). "The test of typicality is whether other members have the same or similar injury, whether the action is based on conduct which is not unique to the named plaintiffs, and whether other class members have been injured by the same course of conduct." *Id.*  Plaintiffs contend that typicality is met here because the named Plaintiffs, like class members, were all charged for marked-up BPOs by Wells Fargo.  To the extent the amount of the mark-up varied among class members, Plaintiffs assert that class certification is still warranted.  *See In re First American Corp. ERISA Litig.*, 258 F.R.D. 610, 618 (C.D.Cal. 2009) ("typicality is a 'permissive' standard and 'the focus should be on the defendants' conduct and plaintiff's legal theory, not the injury caused to the plaintiff'") (quoting *Simpson v. Fireman's Fund. Ins. Co.*, 231 F.R.D. 391, 396 (N.D.Cal. 2005)).

Wells Fargo did not specifically address the Rule 23(a)(3) typicality requirement in its opposition papers.  Instead of conceding the point, Wells Fargo claims that "the same factual [bases] that mean they are not typical are the reasons [Defendants] addressed in terms of commonality."  (Dkt. No. 197 at 15:13-17.)  For the same reasons the Court finds that commonality is met, the Court finds that the interests of the named Plaintiffs are typical of the interests of the class.  *See Wolin*, 617 F.3d at 1175.

### 4.  Adequacy

The final hurdle to certification under Rule 23(a) requires Plaintiffs to demonstrate that they will fairly and adequately protect the interests of their class.  Fed.R.Civ.P. 23(a)(4).  To determine whether Plaintiffs will be adequate class representatives, the Court must consider "(1)[whether] the representative plaintiffs and their counsel have any conflicts of interest with other class members, and (2) [if]the representative plaintiffs and their counsel [will] prosecute the action vigorously on behalf of the class."  *Staton v. Boeing*, 327 F.3d 938, 957 (9th Cir. 2003).  Wells Fargo does not raise any potential conflicts of interest, and the Court cannot discern any in this case.  Defendants likewise do not doubt that Plaintiffs' counsel has and will continue to prosecute this action vigorously.  The Court sees no reason to question the adequacy of Plaintiffs' counsel.

United States District Court
Northern District of California

1  Wells Fargo only attacks the adequacy of Plaintiffs as class representatives insofar as

2  Plaintiffs are purportedly not familiar with the facts of their case.  Specifically, Wells Fargo

3  contends that Plaintiffs Bias, Breaux, and Morrison each demonstrated at their depositions that

4  they have "no understanding of their claims."  (Oppo. at 35:18.)  While Wells Fargo is correct that

5  a court should consider a class representative's familiarity with the facts of their case, courts in

6  this District have followed a "standard of 'striking unfamiliarity' to assess a representative's

7  adequacy in policing the prosecution of his or her lawsuit."  *Welling v. Alexy*, 155 F.R.D. 654, 659

8  (N.D.Cal. 1994).  The Court is not persuaded that Plaintiffs' depositions reflect that they are

9  strikingly unfamiliar with their case.

10  In fact, Plaintiffs demonstrated at their depositions that they have a general understanding

11  of their claims: Wells Fargo charged borrowers more for BPOs than defendants paid third parties

12  to perform them.  Plaintiffs' inability to recount the dates on which BPO charges were assessed by

13  defendants is unavailing.  So too is their understandable confusion as to what, exactly, a BPO is.

14  Wells Fargo attempts to disqualify Plaintiffs for providing inartful explanations of their claims and

15  roles in this litigation, but "[i]t would be unfair to deny [Plaintiffs] access to our courts merely

16  because [they] are unable to articulately respond to questions from attorneys."  *Parrish v. Nat'l*

17  *Football League Players Ass'n*, 2008 WL 1925208, at *7 (N.D.Cal. Apr. 29, 2008).  Indeed, the

18  class mechanism is, at times, the only mechanism available to protect the rights of those who may

19  be less sophisticated than seasoned defense counsel.  Wells Fargo has provided no evidence to

20  contradict the record showing that Plaintiffs have acted adequately on behalf of the class.

21  Accordingly, the Court finds that Plaintiffs are adequate class representatives.

22  **B.  Whether The Paid Class Is Ascertainable**

23  To establish ascertainability for purposes of class certification, Plaintiffs must demonstrate

24  that: members of the proposed class are readily identifiable by objective criteria, and it is

25  administratively feasible to determine whether a particular person is a member of the class.

26  *Xavier*, 787 F.Supp.2d at 1089.  Wells Fargo does not try to claim that the criteria for class

27  membership are not facially objective.  Instead, Wells Fargo takes issue with the feasibility of

28  ascertaining who meets the definition.  Plaintiffs argue that the criteria for membership – (1) a

United States District Court
Northern District of California

1   BPO charge was assessed on the class member's mortgage account and (2) a BPO charge was paid

2   by the class member – are ascertainable using Wells Fargo's own records.  Wells Fargo counters

3   that, absent a file-by-file loan account review, it would be impossible to determine with certainty

4   which borrowers actually *paid* a BPO charge.

5        Wells Fargo produced in this case a database of loan records data containing more than

6   twenty-five (25) million loan level records.  (Pifko Decl., Exh. 17, "Vellrath Report," at 90.)

7   Plaintiffs' damages expert, Dr. Marc Vellrath, reviewed this data to determine which borrowers

8   were assessed a BPO fee (*id*. at 92) and which borrowers paid a BPO fee (*id*. at 94-98).  To do so,

9   Dr. Vellrath had to make certain assumptions based on his experience and Wells Fargo testimony

10  clarifying the structure of the data and coding.  (*Id*.)  These assumptions were only necessary

11  because Wells Fargo's loan data does not "include a field that clearly identifies which BPO

12  assessments were paid by borrowers."  (*Id*. at 95.)  To the extent Wells Fargo is concerned that Dr.

13  Vellrath's method does not conclusively verify payment, "the ascertainability requirement

14  concerns identification rather than verification."  *Flo & Eddie, Inc. v. Sirius XM Radio, Inc.*, 2015

15  WL 4776932, *at 8 (C.D.Cal. May 27, 2015).  Contrary to Wells Fargo's position,

16  "ascertainability does not demand documentary proof of each membership criterion," *id*. at n. 3, or

17  mathematical precision.

18       Even if a file-by-file review were required to identify borrowers who paid a BPO charge,

19  the Paid Class would still be ascertainable.  In a proposed class action involving Wells Fargo loan

20  payment data, a class of borrowers was certified despite Wells Fargo's similar protestations that

21  determining payment would render identification of class members administratively infeasible.

22  *See Lane*, 2013 WL 3187410 at *10.  In *Lane*, the court granted in part a motion for class

23  certification of borrowers who paid Wells Fargo for force-placed flood insurance.  In doing so,

24  Judge Alsup recognized "that identifying the class members will entail some effort on the part of

25  counsel for both parties," but nonetheless certified the class because "the information regarding

26  which borrowers incurred and paid for force-placed insurance charges is ascertainable from Wells

27  Fargo's records."  *Lane*, 2013 WL 3187410, at *10.  So too here.  Wells Fargo's records

28  unquestionably contain information identifying payments of BPO charges.  Accordingly, the Court

concludes that Plaintiffs' proposed class is sufficiently ascertainable.[4]

Wells Fargo also complains that the classes are overbroad because they include persons who suffered no injury. *See Mazza*, 666 F.3d at 594 ("no class may be certified that contains members lacking Article III standing"). More specifically, Defendants argue that the proposed class would include persons who (a) never paid a BPO charge, (b) were not charged for a BPO that included a mark-up, and/or (c) were not exposed to any alleged misrepresentation. Of course, by definition, a member of the Paid Class would have paid a BPO charge. Likewise, this Order amends the class definition to only include persons who paid a BPO charge in an amount greater than the amount defendants paid to a third party vendor for performing the BPO. This narrowing of the class definition moots Wells Fargo's first two concerns. Lastly, the Court is not persuaded that persons who were not exposed to an affirmative misrepresentation do not have standing. The gravamen of Plaintiffs' claim is that, in all of the communications Wells Fargo sent to class members, they never disclosed that BPO charges included a mark-up. It is the charge itself that Plaintiffs contend is the misrepresentation. Again, by definition, a member of the Paid Class necessarily would have been exposed to the charge to pay it. The Paid Class definition, as narrowed herein, is not overbroad.

### C. Rule 23(b)(3) Requirements

Rule 23(b)(3) contains two requirements. First, Plaintiffs must "establish that the questions of law or fact common to class members predominate over any questions affecting only individual members," *i.e.* predominance. Second, Plaintiffs must show superiority, or "that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed.R.Civ.P. 23(b)(3).

#### 1. Predominance

"Considering whether 'questions of law or fact common to class members predominate' begins, of course, with the elements of the underlying cause of action." *Erica P. John Fund, Inc.*

---

[4] As discussed above, the class definition will also include the additional criterion that a paid BPO charge included a mark-up. To the extent the Court anticipates Wells Fargo would argue that determining whether a borrower paid a BPO charge that included a mark-up would also require a file-by-file review, the Court still finds that the Paid Class is sufficiently ascertainable.

United States District Court
Northern District of California

1    *v. Halliburton Co.*, 131 S.Ct. 2179, 2184 (2011) (quoting Fed.R.Civ.P. 23(b)(3)).  At this point in

2    the analysis, the Court has already limited the Paid Class to pursuing causes of action for (a)

3    unjust enrichment under the laws of the fifty states; and (b) violation of the civil RICO statute,

4    specifically 18 U.S.C. section 1962(c).  Thus, the Court's predominance inquiry begins by

5    addressing these two remaining causes of action.  The Court then considers (c) Wells Fargo's

6    affirmative defenses and (d) the nature of Plaintiffs' proposed damages model.

7                     *a.  Nationwide Unjust Enrichment Claims*

8        Plaintiffs submit that a nationwide unjust enrichment class does not present issues of

9    predominance.  They baldly claim no material state-by-state variation exists such that a nationwide

10    class could not adequately and efficiently try its unjust enrichment claims in this Court.  It is true

11    that district courts – including courts in this District – have certified nationwide unjust enrichment

12    classes.  Plaintiffs, though, cannot point to a single case in this Circuit to do so since the Ninth

13    Circuit addressed the issue in *Mazza v. American Honda Motor Co., Inc.*, 666 F.3d 581, 591 (9th

14    Cir. 2012).  This is unsurprising given that, in *Mazza*, the Ninth Circuit unequivocally held that the

15    "elements necessary to establish a claim for unjust enrichment…vary materially from state to

16    state."  *Id.*  It is hard to imagine a clearer directive from our Circuit on this issue.

17        Undeterred, Plaintiffs cite several post-*Mazza* district court decisions in support of

18    certification.  The cases they cite, however, address a separate holding announced in *Mazza*.

19    Specifically, Plaintiffs conflate *Mazza*'s holding with respect to the extraterritorial application of

20    the UCL on the one hand, and certification of nationwide unjust enrichment claims on the other.

21    The post-*Mazza* cases cited by Plaintiffs do not address the Ninth Circuit's unequivocal statement

22    that unjust enrichment laws vary materially from state to state.  Rather, they address the case-by-

23    case analysis the Ninth Circuit said was required when doing a choice of law analysis to determine

24    whether extraterritorial application of the UCL is appropriate.  *See, e.g., Forcellati v. Hyland's,*

25    *Inc.*, 876 F.Supp.2d 1155, 1160 (C.D.Cal. 2012) (holding that post-*Mazza* defendants must still

26    always engage in a case-specific choice-of-law analysis); *Bruno v. Eckhart Corp.*, 280 F.R.D. 540,

27    547 (C.D.Cal. 2012) (same).  Plaintiffs' attempt to the flip the burden to Wells Fargo to show

28    material differences nationwide is similarly unavailing, and is also the result of Plaintiffs'

United States District Court
Northern District of California

superficial and flawed analysis of post-*Mazza* district court decisions.  Plaintiffs have the burden to show that issues of law predominate and how this Court could manage a nationwide class where fifty varying state laws would apply.  They have failed to do so.

Accordingly, certification of a nationwide unjust enrichment class is improper under Rule 23 because material variations in state law would predominate.  *See Mazza*, 666 F.3d at 591; *Kunzelmann v. Wells Fargo Bank, N.A.*, 2013 WL 139913, at *10 (S.D.Fl. Jan. 10, 2013) ("[w]hether treated as a predominance question or a manageability question," material variations in unjust enrichment laws nationwide are "fatal to the quest for certification").

### b.  RICO Claim

To prevail on their RICO claim, Plaintiffs will have to establish that (1) Wells Fargo violated 18 U.S.C. section 1962(c), *i.e.*, a RICO violation, (2) the violation caused an injury, and (3) damages.  *See* 18 U.S.C. § 1964(c).  To prove that Wells Fargo violated Section 1962(c), in turn, Plaintiffs will have to show:

> (i.)  Wells Fargo is a person as defined in 18 U.S.C. section 1961(3);
>
> (ii.)  Wells Fargo conducted or participated in the complained of conduct;
>
> (iii.)  Wells Fargo's participation in the conduct is part of an enterprise as defined in 18 U.S.C. section 1961(4); and
>
> (iv.)  Wells Fargo's participation in the enterprise was performed through a pattern of racketeering activity as defined in 18 U.S.C. sections 1961(5), (1)(B).

Plaintiffs argue, and Wells Fargo does not contest, that the first three elements are particularly amenable to class certification because they focus on Defendants' conduct, and not that of class members.  The Court agrees.  These questions do not implicate any individual inquiry.  Whether Defendants are persons who engaged in conduct that was part of an enterprise within the meaning of the statue can be determined class-wide without any individualized issues that could predominate.

With respect to the fourth element, the racketeering activities in which Plaintiffs seek to prove Wells Fargo engaged are mail fraud and wire fraud as defined in 18 U.S.C. sections 1341 and 1343, respectively.   Wells Fargo focuses on this last requirement, arguing that certification is

improper because individual issues predominate on fraud.  In particular, Wells Fargo argues that whether a class member was exposed to a misrepresentation, or relied on that misrepresentation, will require presentation of individual evidence.

Defendants' first argument concerning misrepresentations, *i.e.* that the RICO claim requires individualized proof of misrepresentations, is misplaced.  Defendants assert that there is no uniform misrepresentation because the monthly statements that Wells Fargo sent to borrowers did not contain BPO charges.  (*See* Dkt. No. 176-11, "Saelao Decl.," Exh. E at 85:1-8.)  According to Defendants, "[b]orrowers were only expected to pay BPO charges at the end of their loan, usually in connection with a request for a payoff amount."  (Oppo. at 13:8-12.)  Regardless of the manner in which Wells Fargo communicated the marked-up BPO charge to class members, it is undisputed that Wells Fargo never disclosed that the BPO charge include a mark-up.  That omission is the misrepresentation that is at issue here.  Under Plaintiffs' theory, Wells Fargo fraudulently deceived every class member by not disclosing the mark-up, and Wells Fargo has not shown that this failure to disclose varied among class members.  This is not a case, as Defendants' claim, where the representations to borrowers differed classwide, counseling against class certification of a RICO claim.  *C.f. In re Countrywide Fin. Corp. Mortg. Mktg. & Sales Pract. Litig.*, 277 F.R.D. 586, 602 (S.D.Cal. 2011) (finding that "individual issues abound" where the plaintiffs failed to establish that the defendant made uniform misrepresentations to class members and the evidence showed that defendants did make disclosures in certain circumstances).  Consequently, the Court finds that Plaintiffs established that individual issues will not predominate on the communications containing the allegedly fraudulent omission.

Next, Wells Fargo argues that the RICO claim requires individualized proof of reliance on the misrepresentation.[5]  Again, the Court finds this argument unavailing.  Where, as here, the case primarily involves a failure to disclose (an omission), a presumption of reliance may be invoked. *Binder v. Gillespie*, 184 F.3d 1059, 1063-64 (9th Cir. 1999) (noting that a presumption of reliance

---

[5] Defendants contend, and Plaintiffs do not dispute, that a civil RICO claim requires proof of reliance.  For purposes of this Order only, the Court assumes, without deciding, that reliance is a necessary element of Plaintiffs' civil RICO claim.

United States District Court
Northern District of California

is appropriate in a case involving primarily omissions because of the "difficulty of proving a speculative negative – that the plaintiff relied on what was not said"); *Affiliated Ute Citizens v. United States*, 406 U.S. 128, 153-54 (1972).  Accordingly, Plaintiffs may be able to invoke a presumption of reliance, which would adjudicate the issue of reliance without individualized inquiry.  Moreover, other courts have recognized that "payment…may constitute circumstantial proof of reliance upon a financial representation."  *In re U.S. Foodservice Pricing Litig.*, 729 F.3d 108, 119-20 (2d Cir. 2013).  In that case, the Second Circuit reasoned that "payment may constitute circumstantial proof of reliance based on the reasonable inference that customers who pay the amount specified in an inflated invoice would not have done so absent reliance upon the invoice's implicit representation that the invoiced amount was honestly owed."  *Id*.  The Court finds that, in this case, "the civil RICO claim's reliance element may be established by circumstantial evidence applicable to the class as a whole—the payment of the [BPO charges]." *Huyer v. Wells Fargo & Co.*, 295 F.R.D. 332, 348 (S.D. Iowa 2013).  Thus, Plaintiffs may be able to show reliance without individual inquiry.  Individual issues with respect to reliance will not predominate on Plaintiffs' RICO claim.

### c.  Defenses to Liability

Wells Fargo next asserts that its affirmative defenses raise predominantly individualized issues that preclude class certification.  "[C]ourts traditionally have been reluctant to deny class action status under Rule 23(b)(3) simply because affirmative defenses may be available against individual members."  *Rodman v. Safeway, Inc.*, 2015 WL 2265972, at *3 (N.D.Cal. May 14, 2015) (quoting *Smilow v. Sw. Bell Mobile Sys., Inc.*, 323 F.3d 32, 39 (1st Cir. 2003)).  Wells Fargo contends two general categories of defenses defeat certification: (1) waiver by defaulted borrowers who accepted loan modifications or entered foreclosure; and (2) statutes of limitation.[6]  With

---

[6] Defendants also raise defenses of setoff, recoupment, and mitigation, but wholly fail to explain how these defenses would apply to Plaintiffs' claims.  Instead, Defendants generally contend that such defenses can raise predominately individualized issues in some cases.  In the absence of any showing that these defenses apply here, the Court declines to address whether they affect the certification analysis. *See Edwards v. First American Corp.*, 798 F.3d 1172, (9th Cir. 2015) ("[w]hen defendants opposing class certification raise a legal defense that may defeat commonality, the district court cannot assume its validity but should make a threshold determination on the legal merits").

United States District Court
Northern District of California

respect to waiver, the potential for the Court to later determine waiver bars Plaintiffs' claims as to some class members does not defeat class certification at this stage. If it "becomes clear that an affirmative defense is likely to bar claims against at least some class members, then a court has available adequate procedural mechanisms, such as placing class members with potentially barred claims in a separate subclass." *Id.* (internal quotations omitted). Until the legal implication of this defense is established, common questions continue to predominate over individual questions. *See* Fed.R.Civ.P. 23(b)(3).

With respect to the statute of limitations defense, the Court similarly finds that individual issues do not predominate such that class certification is defeated. Significantly, variations in state statutes of limitation are irrelevant: this Order only certifies the Paid Class to bring a RICO claim. Thus, a four-year statute of limitations period will apply to all class members. *See Agency Holding Corp. v. Malley-Duff & Associates, Inc.*, 483 U.S. 143, 157 (1987) (holding that the a four-year statute of limitations period would apply to civil RICO actions). In that respect, the Court is concerned that the proposed class definition would include claims outside the limitations period, *i.e.* prior to February 11, 2008 – four years before Plaintiffs filed the complaint. Pursuant to this Order, the Paid Class will be conditionally certified in accordance with the four-year statute of limitations from February 11, 2008 through July 1, 2010. To the extent Plaintiffs wish to raise equitable tolling as a classwide issue, and expand the class period, Plaintiffs must justify a longer class period.

### d.  Damages Model

To satisfy Rule 23(b)(3)'s predominance requirement, Plaintiffs "must be able to show that their damages stemmed from the defendant's actions that created the legal liability." *Levya v. Medline Industries, Inc.*, 716 F.3d 510, 514 (9th Cir. 2013) (citing *Comcast Corp. v. Behrend*, 133 S.Ct. 1426, 1435 (2013); *see also Lindell v. Synthes USA*, 2014 WL 841738, at *14 (E.D. Cal. Mar. 4, 2014) ("so long as the damages can be determined and attributed to a plaintiff's theory of liability, damage calculations for individual class members do not defeat certification"). The ultimate question with respect to damages, post-*Comcast*, is whether "damages could be feasibly and efficiently calculated once the common liability questions are adjudicated." *Levya*, 716 F.3d

at 514.

In that regard, Plaintiffs submit the damages calculation of Dr. Marc Vellrath as a straightforward calculation of their damages directly related to the claims at issue: the allegedly improper BPO charges.  As discussed above, Dr. Vellrath based his calculations on Wells Fargo's own data.  (*See* Vellrath Report.)  He used this data to determine which borrowers were assessed a BPO fee (*id*. at 92) and which borrowers paid a BPO fee (*id*. at 94-98).  Plaintiffs submit that this damages model, accounting for the entire BPO fee, is consistent with their theory of recovery.  In opposition, Wells Fargo argues that Dr. Vellrath's model is not consistent with Plaintiffs' theory of liability because it would award the entire paid BPO amount and does not isolate the allegedly unlawful mark-up.  Again, Defendants attempt to sidestep Plaintiffs' theory of recovery to defeat certification.  Despite Defendants' protestations against the viability of Plaintiffs' theory, Plaintiffs have presented a damages model consistent with their theory that, under RICO, they are entitled to recover a BPO payment in whole.  Whether that theory will ultimately prove efficacious is not yet before the Court.[7]  At class certification, Plaintiffs need only show that damages can be determined and attributed to their theory of liability.  *See Comcast*, 133 S.Ct. at 1433-35. Plaintiffs have met this burden.

### 2.  Superiority

Lastly, the Court may certify a class under Rule 23(b)(3) only upon a finding that a class action is superior to individual suits.  To make this determination, the Court considers the following four non-exhaustive factors: (1) the interests of members of the class in individually controlling the prosecution or defense of separate actions; (2) the extent and nature of any litigation concerning the controversy already commenced by or against the members of the class; (3) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (4) the difficulties likely to be encountered in the management of a class action. Fed.R.Civ.P. 23(b)(3)(A)–(D).  "Where classwide litigation of common issues will reduce

---

[7] Should Plaintiffs be limited to recovery of the amount of the mark-up, Plaintiffs also submit a damages calculation that would satisfy Rule 23(b)(3) in that instance.  Specifically, Dr. Vellrath provided a methodology to quantify the amount of the mark-up using extrapolation techniques.  (Vellrath Report at 94.)

1    litigation costs and promote greater efficiency, a class action may be superior to other methods of

2    litigation." *Valentino v. Carter-Wallace, Inc.*, 97 F.3d. 1227, 1235 (9th Cir. 1996).

3         Wells Fargo argues that a class is not the superior method of adjudication here because

4    numerous individual issues will need to be litigated, rendering trial unmanageable, relying on

5    *Zinser v. Accufix Research Institute, Inc.*, 253 F.3d 1180 (9th Cir. 2001), *am. on. den. reh'g*, 273

6    F.3d 1266 (9th Cir. 2001).  In *Zinser*, the Ninth Circuit applied the four aforementioned factors to

7    affirm the district court's determination that class action treatment was not appropriate.  Namely,

8    the Ninth Circuit found that class certification was unwarranted because: (1) class members each

9    had a minimum recovery of $50,000; (2) nine individual suits were pending involving the same

10   claims, compared to thousands of putative class members, indicating that individual litigation may

11   be sufficient; (3) there was no adequate justification to concentrate the litigation in the proposed

12   forum; and (4) individual issues of negligence and products liability predominated over common

13   issues. *Id.* at 1190-93.

14        Here, by contrast, individual members do not have a great interest in controlling the

15   litigation because the amount of damages per claimant is not large.  *Cf. Zinser*, 253 F.3d 1180,

16   1190 ("[w]here damages suffered by each putative class member are not large, this factor weighs

17   in favor of certifying a class action").  Further, Plaintiffs represent that there are no other cases

18   currently pending challenging the BPO mark-ups charged by Wells Fargo, relieving the "threat of

19   multiplicity" and "risk of inconsistent adjudications" in this case.  *Id.* at 1191.  Unlike *Zinser*,

20   there is adequate justification to concentrate the litigation in this District because Wells Fargo

21   maintains its headquarters here.  Finally, individual issues will not predominate here for the

22   reasons discussed in Section V(C), *supra*.  The Paid Class is only certified to proceed on its RICO

23   claim, erasing the possibility that state-by-state variation in substantive law will render trial

24   unmanageable.  Instead, federal law will be uniformly applicable.  In light of these considerations,

25   a class action is superior to individual adjudication.

26   **VI.    PLAINTIFFS' EVIDENTIARY OBJECTIONS**

27        Plaintiffs filed a document entitled "Plaintiffs' Evidentiary Objections to Evidence

28   Submitted with Opposition to Class Certification," appended to their twenty-page reply.  (Dkt. No.

185-1.)  Plaintiffs' objections were not filed in compliance with the Local Rules of this District. Pursuant to Local Rule 7-3(c), "[a]ny evidentiary and procedural objections to the opposition must be contained in the reply brief or memorandum."  Plaintiffs filed their objections as a separate document outside of their reply brief.  On that basis, the objections are **DENIED**.  Accordingly, Defendants' motion for leave to respond to Plaintiffs' evidentiary objections (Dkt. No. 192) is **DENIED AS MOOT**.

### VII.   CONCLUSION

For the foregoing reasons, Plaintiffs' motion to certify the Assessed Class is **DENIED**. Plaintiffs' motion to certify the Paid Class is **GRANTED IN PART**.  The Court finds it appropriate to certify the Paid Class to bring a civil RICO claim under 18 U.S.C. section 1962(c), as defined below:

> All residents of the United States of America who had a residential mortgage serviced by Wells Fargo Bank, N.A. or its subsidiaries or divisions, and who paid for one or more Broker's Price Opinions charged by Wells Fargo (through PAS), for an amount greater than the amount Wells Fargo (through PAS) paid a third party vendor for the corresponding Broker Price Opinion, from February 11, 2008 through July 1, 2010.

Plaintiffs' motion to certify the Paid Class to bring claims for unjust enrichment, fraud, and violation of the UCL is **DENIED**.

**IT IS SO ORDERED**.

This Order terminates Docket Numbers 164, 192.

Dated: December 17, 2015

_____
**YVONNE GONZALEZ ROGERS**
**UNITED STATES DISTRICT COURT JUDGE**