Daniel Alberstone (SBN 105275)
dalberstone@baronbudd.com
Roland Tellis (SBN 186269)
rtellis@baronbudd.com
Mark Pifko (SBN 228412)
mpifko@baronbudd.com
BARON & BUDD, P.C.
15910 Ventura Boulevard, Suite 1600
Encino, California  91436
Telephone:   (818) 839-2333
Facsimile:    (818) 986-9698

Attorneys for Plaintiffs
LATARA BIAS, ERIC BREAUX, and
TROY LYNNE MORRISON, individually,
and on behalf of the Certified Class

*Additional Counsel Listed Below*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LATARA BIAS and ERIC BREAUX, individually, and on behalf of other members of the general public similarly situated,<br><br>                    Plaintiffs,<br><br>        vs.<br><br>WELLS FARGO & COMPANY, a Delaware corporation, WELLS FARGO BANK, N.A., a national association,<br><br>                    Defendants. | Case Number:  4:12-cv-00664-YGR<br>**CLASS ACTION**<br><br>**PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>Judge:       Hon. Yvonne Gonzalez Rogers<br>Date:        April 4, 2017<br>Time:        2:00 p.m.<br>Location:    Oakland Courthouse,<br>             Courtroom 1 - 4th Floor<br>Trial Date:  None |

## <u>TABLE OF CONTENTS</u>

PAGE

I.  INTRODUCTION ........................................................................................ 2

II.  SETTLEMENT TERMS ............................................................................. 3

III.  LEGAL STANDARD ................................................................................. 5

IV.  DISCUSSION ............................................................................................. 5

    A.  The Settlement Meets the Ninth Circuit's Standards for Final Approval ....... 5

    B.  As this Court Already Found, the *Hanlon* Factors Favor Final
Approval .................................................................................................... 7

        i.  The Strength of Plaintiffs' Case ........................................................ 7

        ii.  The Risk, Complexity, and Likely Duration of Continued
Litigation ...................................................................................... 7

        iii.  The Risk of Maintaining Class Action Status ...................................... 9

        iv.  The Amount Offered in Settlement ...................................................... 9

        v.  The Extent of Discovery Completed .................................................. 10

        vi.  The Experience and Views of Counsel .............................................. 10

    C.  The Settlement Is Procedurally Fair Because it Is the Product of Good
Faith, Informed, and Arm's-Length Negotiations ........................................ 11

    D.  Class Member Reaction to the Settlement Has Been Favorable .................... 13

    E.  The Approved Notice Program Gave the Best Practicable Notice to
Class Members and Satisfied Rule 23 and Due Process ............................... 14

V.  CONCLUSION .......................................................................................... 14

# TABLE OF AUTHORITIES

PAGE(S)

CASES

*Acosta v. Trans Union, LLC*,
  243 F.R.D. 377 (C.D. Cal. 2007) .................................................................. 10

*Barbosa v. Cargill Meat Solutions Corp.*,
  297 F.R.D. 431 (E.D. Cal. 2013) .................................................................. 11

*Ching v. Siemens Indus., Inc.*,
  No. 11-CV-04838-MEJ, 2014 WL 2926210 (N.D. Cal. June 27, 2014) .......... 7, 8, 9, 10

*Chun-Hoon v. McKee Foods Corp.*,
  716 F. Supp. 2d 848 (N.D. Cal. 2010) .......................................................... 13

*Churchill Village, LLC v. Gen. Electric*,
  361 F.3d 566 (9th Cir. 2004) ........................................................................ 13

*Class Plaintiffs v. City of Seattle*,
  955 F.2d 1268 (9th Cir. 1992) ........................................................................ 5

*Ellis v. Naval Air Rework Facility*,
  87 F.R.D. 15 (N.D. Cal. 1980) ........................................................................ 6

*Franco v. Ruiz Food Prod., Inc.*,
  2012 WL 5941801 (E.D. Cal. Nov. 27, 2012) .................................................. 7

*Garner v. State Farm Mut. Auto. Ins. Co.*,
  No. C 08 1365 CW (EMC), 2010 WL 1687832 (N.D. Cal. Apr. 22, 2010) ............ 13

*Glass v. UBS Fin. Serv., Inc.*,
  No. C-06-4068-MMC, 2007 WL 221862 (N.D. Cal. Jan. 26, 2007) .................... 13

*Hanlon v. Chrysler Corp.*,
  150 F.3d 1011 (9th Cir. 1998) ..................................................................... 6, 7

*Kim v. Space Pencil, Inc.*,
  2012 WL 5948951 (N.D. Cal. Nov. 28, 2012) ................................................ 11

*Lane v. Facebook, Inc.*,
  696 F.3d 811 (9th Cir. 2012) ........................................................................ 6

MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

*Mego Financial Corp. Sec. Litig.*,
213 F.3d 454 (9th Cir. 2000) ...................................................................... 6, 12

*Moore v. PetSmart, Inc.*,
2015 WL 5439000 (N.D. Cal. Aug. 4, 2015) ............................................ 7, 9

*Mullane v. Cent. Hanover Bank & Trust Co.*,
339 U.S. 306 (1950).......................................................................................... 14

*Nat'l Rural Telecommunications Coop. v. DIRECTV, Inc.*,
221 F.R.D. 523 (C.D. Cal. 2004).................................................... 10, 11, 12

*Nobles v. MBNA Corp.*,
No. C 06-3723 CRB, 2009 WL 1854965 (N.D. Cal. June 29, 2009).................... 6, 11

*Officers for Justice v. Civil Service Comm'n*,
688 F.2d 615 (9th Cir. 1982) ........................................................................ 6

*In re Omnivision Technologies, Inc.*,
559 F. Supp. 2d 1036 (N.D. Cal. 2008)................................................ 8, 9, 12

*In re Rambus Inc. Derivative Litig.*,
No. C-06-3515–JF, 2009 WL 166689 (N.D. Cal. Jan. 20, 2009)................... 5

*Riker v. Gibbons*,
No. 3:08-cv-00115-LRH-VPC, 2010 WL 4366012 (D. Nev. Oct. 28,
2010) ............................................................................................................. 13

*Rodriguez v. W. Publ'g Corp.*,
563 F.3d 948 (9th Cir. 2009) ..................................................................... 9, 10

*Rosales v. El Rancho Farms*,
2015 WL 4460918 (E.D. Cal. July 21, 2015)........................................... 11, 12

*Staton v. Boeing Co.*,
327 F.3d 938 (9th Cir. 2003) ........................................................................ 6

*In re Syncor ERISA Litig.*,
516 F.3d 1095 (9th Cir. 2008) ..................................................................... 5

*Wren v. RGIS Inventory Specialists*,
No. C-06-05778-JCS, 2011 WL 1230826 (N.D. Cal. Apr. 1, 2011)............. 13

**Statutes**

RICO ......................................................................................................... 7, 8

**Other Authorities**

4 HERBERT B. NEWBERG & ALBA CONTE, NEWBERG ON CLASS ACTIONS §
    11:41 (4th ed. 2002)........................................................................... 5

Fed. R. Civ. P. 23 ................................................................... 3, 5, 6, 14

MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## <u>NOTICE OF MOTION AND MOTION</u>

TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on April 4, 2017 at 2:00 p.m. or as soon thereafter as appropriate, Plaintiffs Latara Bias, Eric Breaux, and Troy Lynne Morrison and the Certified Class will move and hereby do move this Court for an Order granting final approval of the Class Action Settlement.

As discussed below in the Memorandum of Points and Authorities, the Parties have reached this settlement in good faith and it has been well received by Class Members. The settlement fairly reimburses Class Members for their economic losses as a result of the conduct that formed the basis for Plaintiffs' Complaint.  Moreover, the notice program ordered by the Court has timely commenced and is providing the best notice practicable under the circumstances.  The Class Representatives and Class Counsel thus respectfully request that the Court grants  final approval, upon which class benefits will be provided to the Class Members.

This motion is based upon this notice of motion and motion, the memorandum of points and authorities, declarations filed in support thereof, the complete files and records in this action, and any oral arguments the Court may hear.

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

Plaintiffs and Class Representatives Latara Bias, Eric Breaux, and Troy Lynne Morrison ("Plaintiffs"), on behalf of themselves and the certified class of homeowners whose mortgages were serviced by Defendants Wells Fargo & Company and Wells Fargo Bank, N.A. (collectively "Wells Fargo") (the "Class") obtained a significant result in this case -- a non-reversionary, $50 million dollar fund.  After deducting fees, costs, and notice and settlement administration expenses, at least $35 million dollars will be paid directly to Class Members on a *pro-rata* basis.  Accordingly, to facilitate the payment of these monetary benefits to Class Members, Plaintiffs now move the Court for an Order granting final approval of the parties' settlement.

On December 22, 2016, the Court granted preliminary approval and ordered dissemination of notice to the class.  (Dkt. 258.)  Notice is complete and thus far, the reception of the settlement by the Class has been overwhelmingly positive.

Indeed, the settlement in this case exemplifies how the class action mechanism can provide a meaningful recovery to hundreds of thousands of injured Class Members.  Class Members are Wells Fargo customers who paid for inflated amounts for Broker Price Opinions ("BPOs") unlawfully charged to their mortgage accounts.  For nearly five years, Plaintiffs zealously prosecuted their claims against Wells Fargo.  The litigation was hotly contested and involved extensive discovery -- over twenty-five depositions of fact and expert witnesses, the production and review of more than 120,000 pages of documents, and extensive motion practice, including a motion to dismiss, motions to compel discovery, a motion for class certification and a motion for summary judgment.

Finally, after years of fact-finding, hard fought litigation, three mediation sessions with two retired federal judges, and with trial approaching, Class Counsel obtained an extraordinary settlement for Class Members from Wells Fargo:  a $50 million, *non-reversionary* common fund that provides for payments to Class Members without any claim forms or proof of payment.  Because there is no complicated or difficult claims or

verification process on behalf of Class Members, each member of the Class automatically receives the benefits of the settlement.  The settlement will, at a minimum, reimburse the class for an amount equal to *twice* the BPO mark-up amount they paid, if not more. Under any measure, and in view of the procedural posture of the case and the significant risks to both sides of continued litigation, the settlement indisputably is a tremendous victory for all Class Members.

As of the filing of this motion, only 65 Class Members -- out of nearly 290,000 -- opted-out of the settlement and ***none*** have filed objections.  While the deadline to file an objection or opt out does not run until March 9, 2017, this is an early indication that the Class appreciates the benefits received as a result of the lawsuit.

Class Counsel respectfully request that the Court grant final approval of the settlement, finding it fair, adequate and reasonable to the Class, under the standards of Rule 23(e) and the law of this Circuit.

## II. SETTLEMENT TERMS

Under the terms of the settlement, Wells Fargo has established a $50 million, *non-reversionary* fund (the "Fund"), which, subject to Court approval, will be distributed as follows:

1. Payments to members of the Settlement Class ("Class Members") as follows:

   a. All Class Members have received direct notice of the Settlement via records maintained by Wells Fargo, and by publication notice;

   b. All Class Members shall be entitled to recover a *pro rata* allocation of the settlement;

   c. Each Class Member's *pro rata* share of the settlement shall be determined by dividing the total amount paid to Class Members by the total number of loans included in the class;

   d. A check in the amount of the *pro rata* allocation shall be automatically mailed to each Class Member at the last known address in Wells Fargo's records without any claim form or claim "proof";

e.      The claims administrator will engage in outreach efforts to contact Class Members and remind them to cash their checks. If a check mailed to a Class Member is not cashed within 60 days, the Class Member shall not be entitled to an allocation under the settlement; and

f.      If upon expiration of the 60 days referenced in e. above there are un-cashed checks, an additional *pro rata* distribution to Class Members who did cash their checks will be made, and this process will continue until depletion of the entire Fund.

2.    Class representative service award payments in a sum not to exceed $10,000 each;

3.    Payment to Class Counsel for attorneys' fees in an amount, consistent with Ninth Circuit precedent, not to exceed $12.5 million;

4.    Payment to Class Counsel for reimbursement of litigation expenses in an amount not to exceed $1.5 million; and

5     Payments to the claims administrator of up to $3 million  for the cost of providing notice and the administration of payments to Class Members.

(Dkt. 258 Ex. C.)  As discussed in the concurrently filed Declaration of Cameron Azari, to date, the settlement administrator has spent $365,038.34 and anticipates spending approximately $550,000.00 in additional costs, which is far less than the amount allocated under the settlement.  (Declaration of Cameron Azari at ¶ 21.)  Under the terms of the settlement, all unused funds earmarked for the claims administrator will be distributed to Class Members on a *pro rata* basis.  Thus, at least $2 million dollars of the $3 million dollars originally allocated to notice and administration will be distributed to Class Members.

In exchange for these significant benefits, all Class Members agree to release their claims against Wells Fargo which arise out of, or relate to, BPO fees assessed on mortgages serviced by Wells Fargo during the Class Period, May 6, 2005 through July 1, 2010.

III.  **LEGAL STANDARD**

Under Rule 23(e) of the Federal Rules of Civil Procedure, class actions "may be settled, voluntarily dismissed, or compromised only with the court's approval."  As a matter of "express public policy," federal courts favor and encourage settlements, particularly in class actions, where the costs, delays, and risks of continued litigation might otherwise overwhelm any potential benefit the class could hope to obtain.  *See Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992) (noting the "strong judicial policy that favors settlements, particularly where complex class action litigation is concerned"); *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008) (same); *see also* 4 HERBERT B. NEWBERG & ALBA CONTE, NEWBERG ON CLASS ACTIONS § 11:41 (4th ed. 2002) (same, collecting cases).

The MANUAL FOR COMPLEX LITIGATION (FOURTH) (2004) describes the three-step procedure for approval of class action settlements:  (1) preliminary approval of the proposed settlement; (2) dissemination of the notice of the settlement to Class Members, providing for, among other things, a period for potential objectors and dissenters to raise challenges to the settlement's reasonableness; and (3) a formal fairness and final settlement approval hearing.  *Id.* at § 21.63.

The Court completed the first step in the settlement process when it granted preliminary approval to the settlement.  (Dkt. 258.)  Thereafter, Class Counsel completed the second step by implementing the Notice Program pursuant to the terms of the settlement and the Court's Preliminary Approval Order.  Class Representatives and Class Counsel now request that the Court take the third and final step -- holding a formal fairness hearing, granting final approval of the settlement, and entering a Final Judgment.

IV.  **DISCUSSION**

A.  **The Settlement Meets the Ninth Circuit's Standards for Final Approval**

Rule 23 governs a district court's analysis of the fairness of a settlement of a class action.  *See* Fed. R. Civ. P. 23(e).  To approve a class action settlement, the Court must find the settlement is "fundamentally fair, adequate and reasonable."  *In re Rambus Inc. Derivative Litig.*, No. C-06-3515–JF, 2009 WL 166689, at *2 (N.D. Cal. Jan. 20, 2009)

5

1   (citing Fed. R. Civ. P. 23(e)); *see also Mego Financial Corp. Sec. Litig.*, 213 F.3d 454,

2   459 (9th Cir. 2000); *Officers for Justice v. Civil Service Comm'n*, 688 F.2d 615, 625 (9th

3   Cir. 1982)). In granting preliminary approval of the Settlement, the Court took the first

4   step in making this determination. *See* Dkt. 258 at 3.

5           "Although Rule 23 imposes strict procedural requirements on the approval of a

6   class settlement, a district court's only role in reviewing the substance of that settlement is

7   to ensure that it is 'fair, adequate, and free from collusion.'" *Lane v. Facebook, Inc.*, 696

8   F.3d 811, 819 (9th Cir. 2012), cert. denied, 134 S. Ct. 8 (2013) (quoting *Hanlon v.*

9   *Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1998)).  Where, as here, Class Counsel is

10  experienced and supports the settlement, and the agreement was reached after arm's-

11  length negotiations, courts should give a presumption of fairness to the settlement.  *See*

12  *Nobles v. MBNA Corp.*, No. C 06-3723 CRB, 2009 WL 1854965, at *6 (N.D. Cal. June

13  29, 2009); *Ellis v. Naval Air Rework Facility*, 87 F.R.D. 15, 18 (N.D. Cal. 1980), aff'd,

14  661 F.2d 939 (9th Cir. 1981).  Additionally, "[i]t is the settlement taken as a whole, rather

15  than the individual component parts, that must be examined for overall fairness." *Staton*

16  *v. Boeing Co.*, 327 F.3d 938, 952 (9th Cir. 2003).

17          The Ninth Circuit has identified "the strength of the plaintiffs' case; the risk,

18  expense, complexity, and likely duration of further litigation; the risk of maintaining class

19  action status throughout the trial; the amount offered in settlement; the extent of discovery

20  completed and the stage of the proceedings; the experience and views of counsel; the

21  presence of a governmental participant; and the reaction of the Class Members to the

22  proposed settlement" as factors for determining whether a settlement is fair, reasonable,

23  and adequate.  *See Hanlon*, 150 F.3d at 1026.  "The relative degree of importance to be

24  attached to any particular factor will depend on the unique circumstances of each case."

25  *Officers for Justice*, 688 F.2d at 625.

26          As discussed below, all of the relevant factors set forth by the Ninth Circuit for

27  evaluating the fairness of a settlement at this final stage support final approval, and there

28  can be no doubt that the Settlement was reached in a procedurally fair manner given the

involvement of an experienced mediator, Hon. Irma E. Gonzalez, U.S. District Court Judge (Ret.).  For these reasons, the settlement merits final approval.

### B. As this Court Already Found, the *Hanlon* Factors Favor Final Approval

#### i. The Strength of Plaintiffs' Case

The initial factor "addresses Plaintiffs' likelihood of success on the merits and the range of possible recovery." *Franco v. Ruiz Food Prod., Inc.*, 2012 WL 5941801, at *11 (E.D. Cal. Nov. 27, 2012).  "There is no particular formula by which that outcome must be tested." *Moore v. PetSmart, Inc.*, 2015 WL 5439000, at *5 (N.D. Cal. Aug. 4, 2015), appeal dismissed (July 27, 2016).  Indeed, "determining the probability and likelihood of a plaintiff's success on the merits of a class action litigation, 'the district court's determination is [often] nothing more than an amalgam of delicate balancing, gross approximations and rough justice.'" *Id.* (quoting *Officers for Justice v. Civil Serv. Comm'n of City & Cty. of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982)).

Of course, evaluating the "strengths" of Plaintiffs' claims is not solely an assessment of the raw amount of money that could be recovered, assuming a clean sweep at trial; it must also consider Plaintiffs' likelihood of succeeding on the merits.  *Franco*, 2012 WL 5941801, at *11.

Here, Plaintiffs had strong claims against Wells Fargo, and the settlement reflects that because it provides very significant benefits in exchange for the compromise of those claims.  As discussed above, the settlement here fairly compensates Class Members who paid for the unlawfully assessed marked-up BPO fees.  These significant settlement benefits are provided in recognition of the relative strength of Plaintiffs' case on the merits versus the difficulty in establishing all of the elements of a civil RICO claim at trial, the challenges in recovering the full amount of the BPO fee as damages, Wells Fargo's affirmative defenses and the risks and uncertainty of continued litigation.

#### ii. The Risk, Complexity, and Likely Duration of Continued Litigation

The second factor considers "the probable costs, in both time and money, of continued litigation." *Ching v. Siemens Indus., Inc.*, No. 11-CV-04838-MEJ , 2014 WL

2926210, at *4 (N.D. Cal. June 27, 2014) (citing *In re Warfarin Sodium Antitrust Litig.*, 212 F.R.D. 231, 254 (D. Del. 2002), *aff'd*, 391 F.3d 516 (3d Cir. 2004)).  Generally, "unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results." *Ching*, 2014 WL 2926210, at *4 (quoting *Nat'l Rural Telecomms. Coop.*, 221 F.R.D. at 526).

Here, while Class Counsel believes strongly in the merits of their case and likely victory at trial, this must be considered against the considerable risk, as well as cost of time and money in continued litigation.  Indeed, at the time the settlement was reached, the Court had not yet ruled on Wells Fargo's pending summary judgment motion.

After the Class was certified, Wells Fargo moved for summary judgement.  (Dkt. 228.)  In the motion, Wells Fargo argued that Plaintiffs could not prove the enterprise element of their RICO claim.  (*Id.* at 5-14.)  Wells Fargo also argued that even if Plaintiffs were successful in the merits of their RICO claims, Plaintiffs would at most, only be entitled to the amount of the markup (the amount in excess of what Wells Fargo paid the brokers for the BPOs), and not the entire BPO fee, as Plaintiffs contended in their motion for class certification.  (*Id.* at 14-20.)  At the time the settlement was reached, Wells Fargo's motion was fully briefed, oral argument had been completed and the matter was taken under submission.  (Dkt. 236.)  If the Court granted any part of Wells Fargo's motion, members of the Class could have received no recovery at all, or their right to relief could have been severely limited.

Moreover, if Class Counsel had prevailed on Wells Fargo's summary judgment motion and prosecuted these claims against Wells Fargo to conclusion, any potential recovery would come years in the future and at far greater expense.  Additionally, summary judgment aside, there is also a risk that a litigation Class would receive less or nothing at all at trial.  That "risk of continued litigation balanced against the certainty and immediacy of recovery from the Settlement" strongly favors final approval.  *In re Omnivision Technologies, Inc.*, 559 F. Supp. 2d 1036, 1041 (N.D. Cal. 2008) (citing *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d at 458).

### iii.    The Risk of Maintaining Class Action Status

The Court granted Plaintiffs' motion for class certification and certified the class on December 17, 2015.  (Dkt. 201.)  Even so, as with any class action litigation, Plaintiffs face a constant risk in maintaining class action status through trial, particularly in light of the likelihood of appeals.

Here, there was more than a risk; Wells Fargo expressly indicated a desire to move for decertification.  (*See*, *e.g.*, Dkt. 253.)  Specifically, Wells Fargo argued that there was a "serious risk" of decertification because, among other things, Wells Fargo contended many of the BPO fees were not marked up and the certified class included individuals whose BPOs were not marked up.  (Dkt 253 at 7; Dkt. 205 at 3.)  Additionally, Wells Fargo contended that BPO fees were not actually paid by most borrowers and that it was impossible to identify which borrowers did pay.  (*Id.*; *see also*, Dkt. 205 at 5 n.2 ("Wells Fargo continues to believe that it is not possible to determine whether a borrower paid for a 'marked up' BPO absent a file-by-file review of borrowers' loan accounts.").)

Courts consistently recognize the risk of maintain a class as weighing in favor of granting final approval to class action settlements.  *See, e.g., Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 966 (9th Cir. 2009) (noting that "[a] district court may decertify a class at any time" such that even after class certification, "the risk remained that the nationwide class might be decertified" and this factor therefore weighed in favor of settlement); *Moore v. PetSmart, Inc.*, No. 5:12-CV-03577-EJD, 2015 WL 5439000, at *6 (N.D. Cal. Aug. 4, 2015), appeal dismissed (July 27, 2016) ("[T]he notion that a district court could decertify a class at any time is an inescapable and weighty risk that weighs in favor of a settlement").

### iv.    The Amount Offered in Settlement

"The amount offered in settlement is another factor for the Court to consider in determining whether to finally approve a proposed settlement.  *Ching*, 2014 WL 2926210, at *5 (citing *Churchill Village, LLC v. Gen. Electric*, 361 F.3d 566, 574 (9th Cir. 2004)).  As discussed above, Plaintiffs are settling strong claims on very favorable terms as the

1  dollars Wells Fargo has agreed to pay are non-reversionary.  All funds earmarked to Class

2  members will be paid out to them without cumbersome claims forms or proofs.

3  Furthermore, each Class Member can expect to receive, at a minimum, more than two

4  times the amount of the markup at issue.  These facts alone demonstrate that this  is an

5  extraordinary recovery which weighs in favor of final approval.

### v.    The Extent of Discovery Completed

7         "This factor requires the Court to evaluate whether the parties have sufficient

8  information to make an informed decision about settlement."  *Ching*, 2014 WL 2926210,

9  at *5 (*quoting Linney v. Cellular Alaska P'ship*, 151 F.3d 1234, 1239 (9th Cir. 1998)).

10  For the parties "to have brokered a fair settlement, they must have been armed with

11  sufficient information about the case to have been able to reasonably assess its strengths

12  and value."  *Acosta v. Trans Union, LLC*, 243 F.R.D. 377, 396 (C.D. Cal. 2007).  "A

13  settlement following sufficient discovery and genuine arms-length negotiation is

14  presumed fair."  *Nat'l Rural Telecommunications Coop. v. DIRECTV, Inc.*, 221 F.R.D.

15  523, 528 (C.D. Cal. 2004).

16         Here, extensive discovery was completed over the course of five years of difficult

17  litigation.  Over one hundred thousand pages of documents were produced and review and

18  more than twenty-five depositions took place.  Accordingly, both sides were well-armed

19  with the information necessary to reach a reasonable compromise.  *Cf. DIRECTV, Inc.*,

20  221 F.R.D. at 528 ("the proposed settlement was reached only after the parties had

21  exhaustively examined the factual and legal bases of the disputed claims" and "[t]his fact

22  strongly militates in favor of the Court's approval of the settlement.").

### vi.    The Experience and Views of Counsel

24         The Ninth Circuit has noted that "[p]arties represented by competent counsel are

25  better positioned than courts to produce a settlement that fairly reflects each party's

26  expected outcome in litigation."  *Rodriguez*, 563 F.3d at 967.  As such, "[a] district court

27  is 'entitled to give consideration to the opinion of competent counsel that the settlement

28  [is] fair, reasonable, and adequate.'"  *Ching*, 2014 WL 2926210, at *5 (quoting *Isby v.*

1   *Bayh*, 75 F.3d 1191, 1200 (7th Cir. 1996)).

2          Class Counsel, all experienced class action litigators, support this settlement, and it

3   is highly uncertain whether the Class would be able to obtain a better outcome through

4   continued litigation and a trial.  Given Class Counsel's "experience and familiarity with

5   the facts, their recommendation that the settlement be approved is entitled to significant

6   weight."  *Rosales v. El Rancho Farms*, 2015 WL 4460918, at *15 (E.D. Cal. July 21,

7   2015); *see also Nat'l Rural Telecommunications Coop.*, 221 F.R.D. at 528 ("'Great

8   weight' is accorded to the recommendation of counsel, who are most closely acquainted

9   with the facts of the underlying litigation.  This is because '[p]arties represented by

10  competent counsel are better positioned than the courts to produce a settlement that fairly

11  reflects each party's expected outcome in the litigation.'"); *Barbosa v. Cargill Meat

12  Solutions Corp.*, 297 F.R.D. 431, 447 (E.D. Cal. 2013) ("In considering the adequacy of

13  the terms of the settlement, the trial court is entitled to, and should, rely upon the

14  judgment of experienced counsel for the parties.").

15         Moreover, while Class Counsel believe in the strength of this case, they recognize

16  that there are always uncertainties in litigation, making compromise of claims in exchange

17  for certain and timely provision to the Class of the significant benefits described herein an

18  unquestionably reasonable outcome.  *Kim v. Space Pencil, Inc.*, 2012 WL 5948951, at *5

19  (N.D. Cal. Nov. 28, 2012) ("The substantial and immediate relief provided to the Class

20  under the Settlement weighs heavily in favor of its approval compared to the inherent risk

21  of continued litigation, trial, and appeal, as well as the financial wherewithal of the

22  defendant.")); *Nobles v. MBNA Corp.*, 2009 WL 1854965, at *2 (N.D. Cal. June 29, 2009)

23  (citing *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 458 (9th Cir. 2000)) ("The risks

24  and certainty of recovery in continued litigation are factors for the Court to balance in

25  determining whether the Settlement is fair.").

26      **C.     The Settlement Is Procedurally Fair Because it Is the Product of Good
                 Faith, Informed, and Arm's-Length Negotiations**

27  In determining whether "Plaintiffs hav[e] enough information to make informed

28

decisions" regarding settlement, the Court may consider the "extent of discovery conducted to date and the stage of the litigation." *In re Omnivision Technologies, Inc.*, 559 F. Supp. 2d at 1042.  Here, Class Counsel took or defended more than twenty depositions.  Class Counsel also propounded numerous document requests, interrogatories, and requests for admission to Wells Fargo, and engaged in substantive review of more than 100,000 documents received.  Class Counsel's analysis of the huge volumes of discovery material indisputably provided them sufficient information to enter into a reasoned and well-informed settlement.  *See, e.g., In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d at 459 (holding "significant investigation, discovery and research" supported "district court's conclusion that the Plaintiffs had sufficient information to make an informed decision about the Settlement").  Accordingly, because the "settlement follow[s] sufficient discovery and genuine arms-length negotiation," it should be "presumed fair." *Nat'l Rural Telecommunications Coop.*, 221 F.R.D. at 527.

This presumption of fairness is bolstered by the fact that there is no evidence to suggest that Class Counsel colluded with Wells Fargo in any way.  To the contrary, Class Counsel has vigorously prosecuted this action against Wells Fargo for nearly five years, and engaged in numerous discovery battles to ensure that admissible evidence supporting Plaintiffs' allegations were unearthed. Moreover, settlement negotiations were difficult, protracted, and often spirited.  The parties benefited from the assistance of two mediators, both experienced retired federal judges, who played a crucial role in supervising the negotiations and in helping the parties to bridge their differences.  Once again, this weighs in favor of final approval.  *See Rosaless*, 2015 WL 4460918, at *16 (quoting *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011)) ("Notably, the Ninth Circuit has determined the 'presence of a neutral mediator [is] a factor weighing in favor of a finding of non-collusiveness.'"). Taken together, the substantive quality of the Settlement and the procedurally fair manner in which it was reached strongly support final approval here.

### D. Class Member Reaction to the Settlement Has Been Favorable

In accordance with the approved notice plan, the Class Administrator mailed the Notice of Proposed Settlement of Class Action to more than 290,000 Class Members on January 24, 2017. Dkt. 258 ¶9(a). Additionally, the Class Administrator published the Summary Notice once each in *Sports Illustrated* and *People* magazines. Dkt. 258 ¶9(b). While the deadline to request an opt-out or file an objection is March 9, 2017, thus far, the response by the class has been positive: as of the filing of this motion only 65 Class Members -- out of nearly 290,000 -- have opted-out of the settlement and none have filed objections.

These figures provides powerful evidence of the Settlement's fairness. *See, e.g., Churchill Vill., L.L.C. v. GE*, 361 F.3d 566, 577 (9th Cir. 2004) (affirming approval of settlement with 45 objections and 500 opt-outs from class of 90,000 members, roughly 0.6%); *Chun-Hoon v. McKee Foods Corp.*, 716 F. Supp. 2d 848, 852 (N.D. Cal. 2010) (finding that sixteen opt outs in class of 329 members, or 4.86%, strongly supported settlement); *Glass v. UBS Fin. Serv., Inc.*, No. C-06-4068-MMC, 2007 WL 221862, at *5 (N.D. Cal. Jan. 26, 2007) (approving settlement with 2% opt-out rate); *Wren v. RGIS Inventory Specialists*, No. C-06-05778-JCS, 2011 WL 1230826, at *11 (N.D. Cal. Apr. 1, 2011) (holding that "'the absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class action settlement are favorable to the Class Members'") (quoting *Nat'l Rural Telecomm. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 529 (C.D. Cal. 2004)); *see also Garner v. State Farm Mut. Auto. Ins. Co.*, No. C 08 1365 CW (EMC), 2010 WL 1687832, at *14 (N.D. Cal. Apr. 22, 2010); *Riker v. Gibbons*, No. 3:08-cv-00115-LRH-VPC, 2010 WL 4366012, at *5 (D. Nev. Oct. 28, 2010) ("The small number of objections is an indication that the settlement is fair, adequate, and reasonable."). Because the class action settlement procedure requires affirmative action for exclusion, provides a right of objection, but does not ask for votes of support, the case law, such as that noted above, compares a vocal minority against a silent majority as a proxy for support.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### E. The Approved Notice Program Gave the Best Practicable Notice to Class Members and Satisfied Rule 23 and Due Process

Rule 23(c)(2)(B) requires "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B).  Publication and other notice techniques are sufficient where individual notice to the Class is impractical. *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 315 (1950).  Incorporating both direct and indirect notification methods, the Notice Program here takes every reasonable step to ensure no Class Member is unaware of the Settlement. In fact, under these circumstances, where Wells Fargo had loan records containing last known addresses for all Class Members, direct notification was likely achievable for a significant portion of the Class.

Indeed, in its Preliminary Approval Order, the Court held that "the form and content of the Notice and the Summary Notice" and the "method" of notice "meet the requirements of the Federal Rules of Civil Procedure and due process, constitute the best notice practicable under the circumstances, and shall constitute due and sufficient notice to all persons and entities entitled thereto." (Dkt. 258 at 4.)  The ongoing implementation of the Notice Program is fully consistent with this Court's Preliminary Approval Order. Accordingly, the notice program, which is currently being implemented, meets and exceeds all legal requirements.

## V.   CONCLUSION

For the reasons discussed herein, Plaintiffs respectfully request that the Court grant final approval of the Settlement.

Dated:  February 14, 2017                BARON & BUDD, P.C.

                                    By:  /s/ Mark Pifko
                                        Mark Pifko

                                        Daniel Alberstone (SBN 105275)
                                        Roland Tellis (SBN 186269)
                                        Mark Pifko (SBN 228412)
                                        BARON & BUDD, P.C.
                                        15910 Ventura Boulevard, Suite 1600

1   Encino, California  91436
    Telephone:   (818) 839-2333
2   Facsimile:    (818) 986-9698

3
    Marguerite K. Kingsmill (*pro hac vice*)
4   mkingsmill@kingsmillriess.com
5   Charles B. Colvin (*pro hac vice*)
    ccolvin@kingsmillriess.com
6   KINGSMILL RIESS, L.L.C.
7   201 St. Charles Avenue, Suite 3300
    New Orleans, LA 70170
8   Telephone:   (504) 581-3300
9   Facsimile:    (504) 581-3310

10  Philip F. Cossich, Jr. (*pro hac vice*)
11  David A. Parsiola (*pro hac vice*)
    COSSICH, SUMICH,
12  PARSIOLA & TAYLOR, L.L.C.
13  8397 Highway 23, Suite 100
    Belle Chasse, Louisiana 70037
14  Telephone:   (504) 394-9000
15  Facsimile:    (504) 394-9110

16  Attorneys for Plaintiffs
17  LATARA BIAS, ERIC BREAUX,
    and TROY LYNNE MORRISON,
18  individually, and on behalf of the
19  Certified Class

20

21

22

23

24

25

26

27

28