Daniel Alberstone (SBN 105275)
dalberstone@baronbudd.com
Roland Tellis (SBN 186269)
rtellis@baronbudd.com
Mark Pifko (SBN 228412)
mpifko@baronbudd.com
BARON & BUDD, P.C.
15910 Ventura Boulevard, Suite 1600
Encino, California  91436
Telephone:   (818) 839-2333
Facsimile:    (818) 986-9698

Attorneys for Plaintiffs
LATARA BIAS, ERIC BREAUX, and
TROY LYNNE MORRISON, individually,
and on behalf of the Certified Class

*Additional Counsel Listed Below*

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LATARA BIAS and ERIC BREAUX, individually, and on behalf of other members of the general public similarly situated,<br><br>           Plaintiffs,<br>   vs.<br><br>WELLS FARGO & COMPANY, a Delaware corporation, WELLS FARGO BANK, N.A., a national association,<br><br>          Defendants. | Case Number:  4:12-cv-00664-YGR<br>**CLASS ACTION**<br><br>**PLAINTIFFS' MOTION FOR AN AWARD OF ATTORNEYS' FEES, LITIGATION COSTS, AND CLASS REPRESENTATIVE SERVICE AWARDS**<br><br>Judge:     Hon. Yvonne Gonzalez Rogers<br>Date:      April 4, 2017<br>Time:      2:00 p.m.<br>Location:  Oakland Courthouse,<br>              Courtroom 1 - 4th Floor<br>Trial Date: None |

# TABLE OF CONTENTS

**PAGE**

I.   INTRODUCTION ................................................................................... 2

II.  BACKGROUND AND PROCEDURAL HISTORY ............................................. 4

    A.   Factual Background ....................................................................... 4

    B.   Procedural History ........................................................................ 5

        i.    Extensive Motion Practice and Settlement Negotiations ..................... 5

        ii.   Investigation and Discovery .................................................. 7

III. ARGUMENT ...................................................................................... 9

    C.   The Court Should Grant Plaintiffs' Request for Attorneys' Fees and Costs ....................................................................................... 9

        iii.  Plaintiffs Are Entitled to an Award of Attorneys' Fees and Costs ....... 9

        iv.   Plaintiffs' Request for Attorneys' Fees and Costs Is Reasonable ...... 10

            a.   The Requested Fee Is Reasonable as a Percentage of the Fund ................................................................ 12

            b.   The Requested Fee Is Reasonable Under the Lodestar Cross-Check ............................................................ 14

            c.   There Is No Evidence the Fees Sought Are Disproportionate or the Result of Collusion ......................... 15

    D.   The Court Should Approve the Reimbursement of Costs ...................... 17

    E.   The Court Should Approve the Incentive Payments to Class Representatives ........................................................................ 18

        i.    Courts Routinely Approve Incentive Payments ........................... 18

        ii.   Incentive Payments Are Appropriate in This Case ....................... 18

        iii.  The Requested Incentive Payments Are Fair ............................. 19

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

iv.     The Class Representatives Did Not Enter In Incentive
         Agreements Nor Did The Settlement Agreement Condition
         Incentive Payments on Their Support of the Settlement ................... 20

IV.    CONCLUSION ....................................................................................... 20

# TABLE OF AUTHORITIES

PAGE(S)

CASES

*Barbosa v. Cargill Meat Solutions Corp.*,
   297 F.R.D. 431 (E.D. Cal. 2013) ................................................................. 13

*In re Bluetooth Headset Prods. Liab. Litig.*,
   654 F.3d 935 (9th Cir. 2011) ............................................................... *passim*

*Boeing Co. v. Van Gemert*,
   444 U.S. 472 (1980) ................................................................................. 11

*Boyd v. Bank of Am. Corp.*,
   No. SACV 13–0561–DOC, 2014 WL 6473804 (C.D. Cal. Nov. 18, 2014) ................ 13

*Cook v. Niedert*,
   142 F.3d 1004 (7th Cir. 1998) .................................................................... 19

*Elliott v. Rolling Frito–Lay Sales, LP*,
   No. SACV 11–01730 ................................................................................. 13

*Fernandez v. Victoria Secret Stores, LLC*,
   No. CV 06–04149 MMM SHX, 2008 WL 8150856 (C.D. Cal. July 21,
   2008) ..................................................................................................... 13

*Glass v. UBS Fin. Servs., Inc.*,
   2007 WL 221862 (N.D.Cal. Jan. 26, 2007) .................................................... 19

*Grays Harbor Adventist Christian Sch. v. Carrier Corp.*,
   No. 05-05437 RBL, 2008 WL 1901988 (W.D. Wash. Apr. 24, 2008) ...................... 17

*Hanlon v. Chrysler Corp.*,
   150 F.3d 1011 (9th Cir. 1998) .................................................................... 16

*Hensley v. Eckerhart*,
   461 U.S. 424 (1983) ................................................................................. 15

*In re HP Inkjet Printer Litig.*,
   716 F.3d 1173 (9th Cir. 2013) .................................................................... 11

*In re HP Inkjet Printer Litig.*,
   716 F.3d at 1178–79 ................................................................................. 11

MOTION FOR ATTORNEYS' FEES, LITIGATION COSTS, AND SERVICE AWARDS

*Kay Co. v. Equitable Production Co.*,
  749 F. Supp. 2d 455 (S.D. W. Va. 2010)......................................................... 11

*In re Linerboard Antitrust Litig.*,
  No. CIV.A. 98-5055, 2004 WL 1221350 (E.D. Pa. June 2, 2004),
  amended, No. CIV.A.98-5055, 2004 WL 1240775 (E.D. Pa. June 4, 2004) ............... 20

*Laguna v. Coverall North America, Inc.*,
  753 F.3d 918 (9th Cir. 2014) ......................................................................... 16

*In re Media Vision Tech. Sec. Litig.*,
  913 F.Supp. 1362 (N.D.Cal.1996) ................................................................... 17

*Morales v. City of San Rafael*,
  96 F.3d 359 (9th Cir. 1996) ........................................................................... 15

*In re Online DVD-Rental Antitrust Litig.*,
  779 F.3d 934 (9th Cir. 2015) ......................................................... 12, 13, 14, 18

*In re Online DVD-Rental Antitrust Litig.*,
  779 F.3d at 954–55 ...................................................................................... 13

*Radcliffe v. Experian Information Solutions Inc.*,
  715 F.3d 1157 (9th Cir. 2013) ....................................................................... 20

*In re Residential Doors Antitrust Litig.*,
  No. 94-3744, 1998 WL 151804 (E.D. Pa. Apr. 2, 1998) ...................................... 19

*Rodriguez v. West Publishing Corp.*,
  563 F.3d 948 (9th Cir. 2009) ......................................................................... 20

*Spicer v. Chicago Bd. Options Exchange, Inc.*,
  844 F.Supp. 1226 (N.D. Ill. 1993) .................................................................. 18

*Staton v. Boeing Co.*,
  327 F.3d 938 (9th Cir. 2003) ...................................................................*passim*

*Stuart v. Radioshack Corp.*,
  No. C–07–4499 EMC, 2010 WL 3155645 (N.D. Cal. Aug. 9, 2010)......................... 13

*Van Vranken v. Atlantic Richfield Co.*,
  901 F.Supp. 294 (N.D. Cal. 1995)................................................................... 19

MOTION FOR ATTORNEYS' FEES, LITIGATION COSTS, AND SERVICE AWARDS

*Villegas v. J.P. Morgan Chase & Co.*,
   No. CV 09-00261 SBA EMC, 2012 WL 5878390 (N.D. Cal. Nov. 21,
   2012) ........................................................................................................... 19

*Vizcaino v. Microsoft Corp.*,
   290 F.3d 1043 (9th Cir. 2002) ............................................................... 13, 15

**Statutes**

RICO ............................................................................................................... 6

**Other Authorities**

Federal Rule of Civil Procedure, Rule 23 ............................................. 4, 5, 6, 10

Federal Rule of Civil Procedure, Rule 30 ...................................................... 9

MANUAL FOR COMPLEX LITIGATION, § 21.62, n. 971 (4th ed. 2013) ................................ 18

4 NEWBERG ON CLASS ACTIONS § 11:38 (4th ed.) ...................................................... 18

Theodore Eisenberg & Geoffrey P. Miller, *Incentive Awards to Class Action
   Plaintiffs: An Empirical Study*, 53 UCLA L. REV. 1303, 1308 (2006) ........................ 20

## NOTICE OF MOTION AND MOTION

TO THE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that on April 4, 2017 at 2:00 p.m. or as soon thereafter as appropriate, Plaintiffs Latara Bias, Eric Breaux, and Troy Lynne Morrison and the certified Class will move and hereby do move this Court for an Order awarding attorneys' fees, reimbursement of costs, and Class Representative service awards.

As discussed below in the Memorandum of Points and Authorities, this request by Plaintiffs and the Certified Class for an award of attorneys' fees, reimbursement of costs, and Class Representative service awards is consistent with authority in this Circuit and is provided for in the Settlement Agreement.  Moreover, Class Members were timely apprised of the request for attorneys' fees of not more than $12.5 million ($12,500,000), costs not to exceed $1.5 million ($1,500,000), and Class Representative service awards not to exceed $10,000, through the notice program approved by this Court.

Thus, Class Representatives and Class Counsel respectfully request that the Court grant this motion and award attorneys' fees, reimbursement of costs, and Class Representative service awards in the amounts requested.

This motion is based upon this notice of motion and motion, the memorandum of points and authorities, declarations filed in support thereof, the complete files and records in this action, and any oral arguments the Court may hear.

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.   INTRODUCTION

Having achieved a nationally-lauded, $50 million ($50,000,000), *non-reversionary, common fund* settlement in this action, Plaintiffs and Class Representatives Latara Bias, Eric Breaux, and Troy Lynne Morrison ("Plaintiffs"), on behalf of themselves and the certified class of homeowners whose mortgages were serviced by Defendants Wells Fargo & Company and Wells Fargo Bank, N.A. (collectively "Wells Fargo") (the "Class"), now move the Court for an Order awarding attorneys' fees, reimbursement of litigation expenses, and Class Representative incentive awards.

The settlement required Wells Fargo to establish a non-reversionary $50 million dollar common fund (which has been done), from which Class Members will be paid, *without the burden of submitting claim forms or claim proof*, in an amount that is at least *twice* the amount of the BPO markup charge at issue in the case.  (Declaration of Dan Alberstone in Support of Motion for Attorneys' Fees, Litigation Costs and Service Awards and Final Approval ("Alberstone Decl.") ¶¶ 29-33, Ex. A (Settlement Agreement). )  Consistent with authority in this Circuit, the settlement also provides for the payment of attorneys' fees in an amount up to $12.5 million ($12,500,000), reimbursement of litigation expenses up to $1.5 million ($1,500,000), and Class Representative incentive awards of $10,000 for each named Plaintiff.  (Settlement Agreement at ¶¶ 4.05-4.06. )  All of these requests were discussed in the motion for preliminary approval of the settlement, which the Court granted on December 22, 2016.  (Dkt. 256.)  As part of preliminary approval, notice was disseminated to Class Members, which disclosed all of the above requests and afforded Class Members an opportunity to object or comment on the requests -- thus far, none have done so.

As discussed in the motion for preliminary approval and the Court's order granting preliminary approval, the settlement in this case is an outstanding recovery, and provides substantial benefits to Class Members, returning to them approximately two times the full amount of the markup at issue in the case, without the burden of a claims process.  As the

Court is aware, the Class Members' recovery under this settlement did not come easily. The litigation was hotly contested and involved extensive discovery, including over twenty-five depositions of fact and expert witnesses, the production and review of more than 120,000 pages of documents, and extensive motion practice, including a motion to dismiss, motions to compel discovery, a motion for class certification, and summary judgment.  (See generally, Alberstone Decl.)  In fact, even after obtaining class certification, a settlement was only achieved by Plaintiffs after multiple rounds of mediation with highly experienced, retired federal judges.

Under any measure, and in view of the procedural posture of the case and the significant risks to both sides of continued litigation, the settlement indisputably is a tremendous victory for all Class Members.  This victory, of course, required a persistent, drawn out effort and a substantial allocation of resources by Class Counsel to active litigation spanning for more than five years, in multiple jurisdictions, and before several courts.  While substantial, the attorneys' fees requested are reasonable.  The amount of attorneys' fees requested here ($12.5 million) represents 25% of the total settlement fund, which is in line with the Ninth Circuit's benchmark for fees as a percentage of recovery. Moreover, to the extent the Court wishes to employ a "cross check" against Class Counsel's lodestar to ensure that the fees awarded are reasonable, the amount represents a nominal 1.04 multiplier.

The Class Representative incentive awards represent payment for years of work put in by Plaintiffs on behalf of the Class, including communicating with counsel, reviewing and responding to written discovery, and participating in depositions.  Without individuals like the Class Representatives who were willing to step forward and provide their time, effort, and patience, with no guarantee of success, this case, as well as the result achieved, would not have been possible.

With respect to fees, Class Counsel is not seeking an undeserved windfall.  Their request seeks fair and reasonable compensation for their time and effort, which resulted in substantial benefits to hundreds of thousands of Class Members, only after years of

1   difficult work, with uncertain recovery, and is consistent with the standards of Rule 23(h)

2   and the law of this Circuit.  Class counsel have taken their commitment and

3   responsibilities to the entire Class seriously, and firmly believe that they have

4   demonstrated throughout their representation and this successful resolution that the Court

5   made the correct decision in appointing them Class Counsel.

6   **II.     BACKGROUND AND PROCEDURAL HISTORY**

7         **A.     Factual Background**

8         As the Court is well aware, this case concerns allegations of Wells Fargo's loan

9   servicing misconduct.  Wells Fargo is in the business of servicing mortgage loans of

10  homeowners like Plaintiffs and other members of the Class.  When homeowners fall

11  behind on their loan payments, Wells Fargo hires third-party vendors to provide certain

12  default-related services, such as BPOs, which are purportedly performed to protect the

13  lender's interest in the property.  As disclosed in homeowners' uniform mortgage

14  contracts, Wells Fargo may pay vendors to perform BPOs when reasonable or

15  appropriate, and will be "paid back" by the homeowner for amounts "disbursed" to the

16  vendor.  However, Wells Fargo is not permitted to engage in self-dealing transactions and

17  add markups to the BPO charges in order to profit from such services.  Nevertheless, that

18  is precisely what Wells Fargo allegedly did.

19        As Plaintiffs alleged, and discovery confirmed, Wells Fargo maintained uniform

20  practices for charging homeowners BPO fees that exceeded the actual cost and, therefore,

21  went far beyond what Plaintiffs contend Wells Fargo was legally permitted to do.

22  Plaintiffs asserted that Wells Fargo concealed its illicit scheme by funneling marked-up

23  BPO charges through an internal business unit, Premiere Asset Services, fraudulently

24  making it appear as if the inflated charges were legitimate costs assessed by an

25  independent, third-party vendor, when, in fact, they were not.

26        The BPO charges at issue are identifiable from Wells Fargo's records.  Using those

27  records, and with the assistance of an expert, the Settlement compensates all Class

28

members alike who paid for the unlawful BPO charges assessed against their mortgage accounts.

### B.    Procedural History

#### i.    Extensive Motion Practice and Settlement Negotiations

This case was filed on February 10, 2012. (Dkt. 1.)  The case was pled as a putative nationwide class action. (*Id.*)  After assignment to this Court on February 21, 2012, and service on Wells Fargo, Plaintiffs filed a First Amended Complaint on April 6, 2012. (Dkt. 10.)  On June 15, 2012, Wells Fargo filed a Motion to Dismiss the First Amended Complaint. (Dkt. 37.)

Subsequently, Plaintiffs filed a Second Amended Complaint.[1] (Dkt. 61.) Thereafter, on August 7, 2012, Wells Fargo filed a Motion to Dismiss the Second Amended Complaint. (Dkt. 66.)  This Court denied Wells Fargo's motion on April 25, 2013. (Dkt. 75.)  Approximately one month later, on May 23, 2013,  Wells Fargo filed its Answer to the Second Amended Complaint. (Dkt. 78.)

On November 4, 2013, the parties advised the Court that they selected a mediator, the Honorable Ronald M. Sabraw (Ret.) of JAMS, and that they were in the process of selecting a mutually acceptable mediation date. (Dkt. 104.)  The parties attended a mediation with Judge Sabraw on April 16, 2014, but were unable to resolve the case at that time.

On October 1, 2014, the Court referred open and future discovery matters to Magistrate Judge Spero. (Dkt. 141.)  After the completion of extensive discovery (described in detail below), Plaintiffs filed a Motion to Certify this matter as a class action on June 9, 2015. (Dkt. 164.)  Wells Fargo filed an opposition to class certification on July 10, 2015, and on August 10, 2015 Plaintiffs filed a reply. (Dkts. 176, 185.)

With the class certification briefing completed, on September 9, 2015, the parties

[1] Similar cases filed by Plaintiff Irby Fitch and Troy Lynne Morrison, related to this litigation on April 14, 2008 and May 6, 2008 respectively, were transferred to the Northern District of California and consolidated with this case on November 4, 2013. (Dkt. 105.)

participated in another full-day, in person mediation session with retired United States District Judge Hon. Irma E. Gonzalez.  (Dkt. 248-3, Declaration of Hon. Irma E. Gonzalez (Ret.) in Support of Class Action Settlement ("Hon. Gonzalez (Ret.) Decl.") ¶ 4.) However, the parties were unable to reach a resolution of the case at that time.

The Court heard oral argument in connection with Plaintiffs' motion for class certification on September 29, 2015, and in December 2015, certified the following class:

> All residents of the United States of America who had a residential mortgage serviced by Wells Fargo Bank, N.A. or its subsidiaries or divisions, and who paid for one or more Broker's Price Opinions charged by Wells Fargo (through PAS), for an amount greater than the amount Wells Fargo (through PAS) paid a third party vendor for the corresponding Broker Price Opinion, from February 11, 2008 through July 1, 2010.

(Dkt. 201 at 22.)[2]

On March 7, 2016, following the submission of the parties' letter briefs, the Court, at Plaintiffs' request, extended the class period from February 11, 2008 to an earlier date of May 6, 2005 (still through July 1, 2010), and required Plaintiffs to submit a proposed class notice.  (Dkt. 221.)  The Court subsequently approved the class notice on March 23, 2016.  (Dkt. 224.)

On April 5, 2016, Wells Fargo filed a Motion for Summary Judgment or Partial Summary Judgment.  (Dkt. 228.)  Wells Fargo argued that Plaintiffs could not prove the enterprise element of their RICO claim.  (*Id*. at 5-14.)  Wells Fargo also argued that even if Plaintiffs were successful in the merits of their RICO claims, Plaintiffs would at most, only be entitled to the amount of the markup (the amount in excess of what Wells Fargo paid the brokers for the BPOs), and not the entire BPO fee, as Plaintiffs contended in their motion for class certification.  (*Id*. at 14-20.)  Plaintiffs filed a response on April 19, 2016,

---

[2] The Court certified a class on December 17, 2015, finding that the elements of Federal Rule of Civil Procedure, Rule 23 (a) and (b)(3) were satisfied.  The Court also found that the class representatives Latara Bias, Eric Breaux and Troy Lynne Morrison as well as Plaintiffs' counsel Baron & Budd, P.C.; Cossich, Sumich, Parsiola and Taylor; and Kingsmill Riess, LLC satisfy the adequacy requirements for certification.  (Dkt. 201.)

and Wells Fargo filed its reply on April 26, 2016.  (Dkts. 231, 234.)  The Court heard oral argument in connection with the Summary Judgment Motion on May 17, 2016.

Prior to the Court issuing a ruling on Wells Fargo's pending motion, the parties jump-started settlement discussions and agreed to attend another mediation on September 7, 2016 before the Honorable Irma E. Gonzalez (Ret.).  (Hon. Gonzalez (Ret.) Decl. ¶ 4.)  After an entire day of intense and spirited negotiations, the September 7th mediation before Judge Gonzalez culminated in the parties signing a settlement term sheet.  (*Id*. at ¶ 10.)  The next day, September 8, 2016, the parties filed a Joint Notice of Settlement.  (Dkt. 242.)  On December 22, 2016, the Court granted preliminary approval and ordered dissemination of notice to the class.  (Dkt. 258.)

### ii.   Investigation and Discovery

Plaintiffs and Wells Fargo conducted a comprehensive factual investigation into the allegations, including several rounds of document requests, interrogatories, requests for admissions, numerous depositions conducted around the country, and extensive third party discovery.  (Alberstone Decl. ¶¶ 7-20.)  Plaintiffs' counsel reviewed over 120,000 pages of documents produced by Wells Fargo in response to document requests.  (*Id*. at ¶ 11.)  These documents related to Wells Fargo's internal and external communications, policies and procedures, loan practices, disclosures, BPO policies, loan records, customer databases, communications with governmental entities and record keeping procedures.  (*Id*.)  Additionally, Plaintiffs served seven sets of interrogatories on Wells Fargo Bank, N.A. and another forty interrogatories on Wells Fargo & Co., and sought multiple sets of requests for admission from each entity.  (*Id*. at ¶ 14.)  Wells Fargo also sought extensive discovery from the representative Plaintiffs via document requests, interrogatories, and requests for admission.

In addition to merits discovery, a significant amount of time was necessarily spent on obtaining and analyzing Wells Fargo's "loan level" data.  (*Id*. at ¶ 15.)  Although Wells Fargo put up various obstacles to Plaintiffs' efforts to obtain the data necessary to create a valid damage model, after Court intervention, Plaintiffs were successful in obtaining the

necessary data.  (*Id.*)  Yet, Plaintiffs were still faced with the challenge of evaluating Wells Fargo's loan level data, because the bank did not maintain clear and accurate records with respect to borrowers' payments of BPO fees.  In the end, with the assistance of their damage expert, Plaintiffs were ultimately successful in developing a damage model both with respect to the full amount of the BPO charge as well as the "marked-up" BPO fee amount.

Aside from the written discovery, Plaintiffs also conducted depositions of Wells Fargo's corporate representatives and employees on topics relevant to their claims, including Kevin Arend, Alan Jones, Jesus Tirado, Edmund Murphy, Beth McCauley, Carol Garcia, Ronnie Rittenhouse, J.K. Huey, Scott Arend, Robert Caruso, Dan Mugge and Anthony Aguilera.  (*Id.* at ¶ 16.)  Moreover, Plaintiffs took the depositions of experts designated by Wells Fargo, including George Schwartz, Marshall Dennis, and Thomas Lambert.  Wells Fargo took the depositions of the Plaintiffs, and Plaintiffs' experts Adam Levitin, Jacqui Peace and Marc Vellrath.  (*Id.*)

Additionally, Plaintiffs sought information relevant to their claims through third-party subpoenas.  (*Id.* at ¶ 17.)  Specifically, Plaintiffs sought documents and information from the following companies:  First American Financial Corporation; Fidelity National Financial, Inc.; Fidelity National Information Services, Inc.; Dalas, Inc. dba Mark to Market; First American Field Real Estate Services, Inc. n/k/a Corelogic Field Services; LPS Field Services, Inc. f/k/a/ Fidelity National Information Service Inc.; Mortgage Contracting Services, LLC; Mortgage Specialists International; National Field Representatives, Inc.; ServiceLink, Valuation Information Technology, LLC; ClearCapital.com, Inc.; Corelogic Solutions, LLC; Fidelity national Default Solutions; Goodman Dean, Inc.; Lender Mortgage Processing Solutions, Inc.; LPS Property Tax Solutions, Inc.; LSI Appraisal LLC; Metropolitan Appraisal Service, Inc.; Mortgage Contracting Services, LLC; and Summit Valuations, LLC.  (*Id.*)

Throughout the lengthy discovery process, the parties engaged in extensive meet and confer efforts to avoid motion practice, but, on several occasions, they required Court

adjudication concerning discovery disputes.  (*Id*. at ¶¶19-20.)  For instance, after the parties filed joint briefs, the Court heard argument related to the propriety of third party subpoenas on August 12, 2014.  (*Id*. at ¶ 19.)  Once again, after the submission of joint briefing, the Court heard argument related to the scope of Plaintiffs' Rule 30(b)(6) deposition notices on October 17, 2014.  (*Id*. at ¶ 20.)  Finally, on November 6, 2014, the Court heard argument regarding further deposition practice.  (*Id*.)

## III.   ARGUMENT

### C.   The Court Should Grant Plaintiffs' Request for Attorneys' Fees and Costs

#### iii.   Plaintiffs Are Entitled to an Award of Attorneys' Fees and Costs

Class Counsel obtained a significant settlement on behalf of the class.  As discussed more fully in the motion for preliminary approval (Dkt. 248), granted by the Court on December 22, 2016 (Dkt. 256), and in the motion for final approval filed concurrently with this motion, Class Counsel  achieved a ***$50 million  settlement*** with Wells Fargo for Class Members, ***in the form of a non-reversionary common fund***.  Each Class Member will be fully reimbursed for the cost of a marked-up BPO charge.  Moreover, Class Members will receive payment automatically without a cumbersome claims process.  Because the fund is non-reversionary, there is no risk of "low participation" or an incentive to discourage participation.  Wells Fargo is paying $50 million to bring this case to a close.  This is, by any measure, an extraordinary result for Class Members.

However, as the Court is well aware, this outstanding result did not come quickly or easily.  Moreover, Class Counsel took a significant financial risk in prosecuting this case, expending a substantial amount of time, money and resources on a contingent basis over the course of more than five years, without any assurance of victory and with the singular focus of maximizing the recovery of Class Members.  Class Counsel's prosecution of this case was vigorously opposed by experienced and skilled attorneys representing Wells Fargo throughout the litigation.  As of January 2017, Class Counsel devoted more than 18,462  hours to this case, representing $12,001,839.50  in lodestar, and incurred $1683,611.83 in out of pocket expenses.  (Alberstone Decl. Exs. B & D.)  Indeed, it is

likely Class Counsel will continue to incur additional attorney hours in connection with final approval, responding to inquiries from Class Members, interacting with the notice and claims administrator, and generally overseeing the implementation of the settlement.

Rule 23(h) provides for the payment of attorneys' fees in a class action settlement and reads, in relevant part, "[i]n a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement." Rule 23(h) sets forth the requirements and procedures for approving a request for attorneys' fees and costs in a class action settlement. Class Counsel fulfilled these requirements and incorporated these procedures into the preliminary and final approval process such that Class Members received timely notice of the fees, costs, and awards to be requested by Plaintiffs and Class Counsel, and were afforded an opportunity to object or comment. This Court adopted those procedures as part of its Preliminary Approval Order. (Dkt. 258.)

As part of the settlement, Class Counsel agreed to seek attorneys' fees of not more than $12.5 million ($12,500,000), reimbursement of expenses not to exceed $1.5 million ($1,500,000), and service awards for each Class Representative of $10,000 each. The attorneys' fees sought are 25% of the total fund and, as discussed below, are presumptively reasonable under Ninth Circuit law.

### iv. Plaintiffs' Request for Attorneys' Fees and Costs Is Reasonable

Although this Court retains an "independent obligation to ensure that the award, like the settlement itself, is reasonable, even if the parties have already agreed to an amount" *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 941 (9th Cir. 2011), because the fees, costs, and incentive awards here are in a settlement context and are the subject of compromise, the Court need not subject the fees to the same level of scrutiny as when the fee amount is litigated. *Staton v. Boeing Co.*, 327 F.3d 938, 966 (9th Cir. 2003).

In that regard, where, as here, a class action settlement includes a settlement fund, the Court may employ either of two methods to determine the reasonableness of a fee request: (a) the percentage-of-fund method; or (b) the lodestar method. *Bluetooth*, 654

F.3d at 942.  The percentage-of-the-fund method, also known as the common-fund doctrine, allows attorneys' fees to be based on a percentage of the total recovery to the plaintiff class.  *See Boeing Co. v. Van Gemert*, 444 U.S. 472, 478 (1980).  The common fund doctrine recognizes that where a group of individuals receives a benefit from litigation without directly contributing to its costs, the group would be unjustly enriched unless each member is required to contribute a portion of the benefits to compensate the attorneys responsible for creating or enhancing the common fund.  "Thus, the common fund doctrine ensures that each member of the winning party contributes proportionately to the payment of attorneys' fees."  *Staton* , 327 F.3d at 967.

The modern trend among courts favors the percentage-of-the-fund approach to awarding attorney's fees in class action cases, because it "better aligns the interests of Class Counsel and Class Members . . . [by] t[ying] the attorneys' award to the overall result achieved rather than the hours expended by the attorneys."  *Kay Co. v. Equitable Production Co.*, 749 F. Supp. 2d 455, 461 (S.D. W. Va. 2010).  "[T]he most critical factor [in determining an appropriate attorneys' fee] is the degree of success obtained."  *In re HP Inkjet Printer Litig.*, 716 F.3d 1173, 1178 (9th Cir. 2013) (quoting *McCown v. City of Fontana*, 565 F.3d 1097, 1103–05 (9th Cir. 2009)).  "Where both the class and its attorneys are paid in cash, this task is fairly effortless.  The district court can assess the relative value of the attorneys' fees and the class relief simply by comparing the amount of cash paid to the attorneys with the amount of cash paid to the class.  The more valuable the class recovery, the greater the fees award."  *In re HP Inkjet Printer Litig.*, 716 F.3d at 1178–79 (citing *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983).  The percentage-of-the-fund approach rewards counsel for efficiently and effectively bringing a class action case to a resolution, rather than prolonging the case in the hopes of artificially increasing the number of hours worked on the case.  *Id.* at 462.  The percentage of the common fund is also preferable to "the often more time-consuming task of calculating the lodestar."  *Bluetooth*, 654 F.3d at 942.

When applying the percentage of the fund method, "courts typically calculate 25%

of the fund as the 'benchmark' for a reasonable fee award, providing adequate explanation in the record of any 'special circumstances' justifying a departure." *Bluetooth*, 654 F.3d at 942 (citing *Six (6) Mexican Workers v. Ariz. Citrus Growers*, 904 F.2d 1301, 1311 (9th Cir.1990); *Powers*, 229 F.3d at 1256–57; and *Paul, Johnson, Alston & Hunt v. Graulty*, 886 F.2d 268, 272 (9th Cir.1989)).  Ultimately, "[t]hough courts have discretion to choose which calculation method they use, their discretion must be exercised so as to achieve a reasonable result.  *Bluetooth*, 654 F.3d 935, 942 (9th Cir. 2011) (citing *See In re Coordinated Pretrial Proceedings*, 109 F.3d 602, 607 (9th Cir.1997); and *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1294–95 n.2 (9th Cir. 1994)).

Accordingly, whenever feasible, the Ninth Circuit encourages district courts to guard against unreasonable outcomes by cross-checking one method against the other. *Bluetooth*, 654 F.3d at 944-45.  Here, as discussed in detail, a cross-check confirms the reasonableness of Plaintiffs' request:  the award sought represents the exact benchmark 25% of the recovery and, after calculating the immense amount of time that went into prosecuting this action, the award represents a nominal 1.04 multiplier.

### a. The Requested Fee Is Reasonable as a Percentage of the Fund

The attorneys' fees requested by Class Counsel here are reasonable as a percentage of the fund.  Courts employ a percentage-of-recovery analysis to confirm that Class Counsel's compensation is commensurate with the monetary relief provided to the class. *Bluetooth*, 654 F.3d at 944-45.  "Under the percentage-of-recovery method, the attorneys' fees equal some percentage of the common settlement fund; in this circuit, the benchmark percentage is 25%." *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 949 (9th Cir. 2015) (citing *Bluetooth*, 654 F.3d at 942).  The amount is calculated as a percentage of the total settlement fund, "including notice and administrative costs, and litigation expenses." *Id.*, at 953.

In this case, under the percentage-of-recovery method, the requested $12.5 million of attorneys' fees are exactly 25% of the $50 million total settlement fund.  Accordingly,

1   the fees are precisely on the benchmark set forth by the Ninth Circuit and are

2   presumptively reasonable.  *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d at 949

3   (affirming fee award of 25% of the overall settlement fund of $27,250,000); *Vizcaino v.*

4   *Microsoft Corp.*, 290 F.3d 1043, 1046 (9th Cir. 2002) (affirming fee award of 28% of

5   $96,885,000 settlement fund); *see also*, *Boyd v. Bank of Am. Corp.*, No. SACV 13–0561–

6   DOC (JPRx),  2014 WL 6473804, at *8 (C.D. Cal. Nov. 18, 2014) (awarding 33% of

7   $5,800,000 settlement); *Fernandez v. Victoria Secret Stores, LLC*, No. CV 06–04149

8   MMM SHX, 2008 WL 8150856, at *16 (C.D. Cal. July 21, 2008) (awarding 34% of the

9   $8,500,000 common fund); *Elliott v. Rolling Frito–Lay Sales, LP*, No. SACV 11–01730

10  DOC, 2014 WL 2761316, at *10 (C.D. Cal. June 12, 2014) (awarding 30% of common

11  fund); *Stuart v. Radioshack Corp.*, No. C–07–4499 EMC, 2010 WL 3155645, at *6 (N.D.

12  Cal. Aug. 9, 2010) (awarding 33% of common fund); *Barbosa v. Cargill Meat Solutions*

13  *Corp.*, 297 F.R.D. 431, 450 (E.D. Cal. 2013) (awarding 33% of common fund).

14          The Ninth Circuit has provided several factors courts may consider in assessing the

15  reasonableness of a request for attorneys' fees calculated using the percentage-of-recovery

16  method including:  (1) the extent to which Class Counsel achieved exceptional results for

17  the class; (2) whether the case  was risky for Class Counsel; (3) whether counsel's

18  performance generated benefits beyond the cash settlement fund; (4) the market rate for

19  the particular field of law; (5) the burdens Class Counsel experienced while litigating the

20  case (*e.g.*, cost, duration, foregoing other work); and (6) whether the case was handled on

21  a contingency basis.  *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d at 954–55

22  (quoting  *Vizcaino*, 290 F.3d at 1048–50).

23          Here, each of these factors supports the reasonableness of the award.  First, as

24  discussed above, each Class Member is receiving, at a minimum, approximately twice the

25  marked up amount of an unlawful BPO charge at issue in this case.  This is payment is

26  automatic and requires no affirmative act by Class Members to receive payment.  This is

27  certainly an exceptional result.  Second, the case was most certainly risky for Class

28  Counsel.  This settlement is the result of more than five years of fact finding, hard fought

litigation and extensive settlement talks.  In fact, a settlement was achieved only after multiple mediation sessions before two different retired federal judges, and even then only after the parties had essentially completed the pre-trial process and were preparing for an imminent trial.  <u>Third</u>, as discussed in the concurrently filed declarations of Daniel Alberstone, Marguerite Kingsmill, and David Parsiola, Class Counsel's rates are in line with those charged by comparable attorneys.  <u>Fourth</u>, Class Counsel devoted significant resources to this case and spent a great deal of money on document review, experts, and even notice to the class following class certification.  Like any organization, Class Counsel's resources are finite, and the resources devoted to his matter certainly required forgoing other work.  <u>Finally</u>, this case was at all times handled on a contingency basis with no payment by Class Representatives or Class Members and certainly no assurance that Class Counsel would receive any compensation for  their efforts.

### b.    The Requested Fee Is Reasonable Under the Lodestar Cross-Check

While an attorneys' fee award of 25% of the total settlement fund is presumptively reasonable, the Court may engage in a "cross-check" using the lodestar amount to ensure that Class Counsel is not receiving an unearned windfall.  Here, because the cross-check reveals that the fee award is a nominal 1.04 multiplier, the Court can be assured that the requested fee award is entirely reasonable.

The lodestar method requires "multiplying the number of hours the prevailing party reasonably expended on the litigation (as supported by adequate documentation) by a reasonable hourly rate for the region and for the experience of the lawyer."  *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d at 949 (citing *Bluetooth*, 654 F.3d at 942).

To assist the Court in evaluating the reasonableness of the time spent on this Class Counsel have presented a summary of their time records (Alberstone Decl. Ex. B), in addition to detailed time records for each firm (Alberstone Decl. Ex. C; Kingsmill Decl. Ex. A; Parsiola Decl. Ex. A).  Class Counsel devoted a total of 18,462.18 hours successfully prosecuting this litigation and negotiating the Settlement resulting in a

lodestar of $12,001,839.50.  Additionally, Class Counsel and incurred $1,683,611.83 in litigation costs.  This current lodestar represents the total work Class Counsel have undertaken since the inception of the case through January 2017.[3]  The hours spent on this case are reasonable and reflect the ability and efficiency of Class Counsel.  Moreover, counsel's hourly rates are reasonable and comparable to hourly rates in this forum for comparable services.  (Alberstone Decl. ¶ 42; Kingsmill Decl. ¶ 4; Parsiola Decl. ¶ 4.)  The work performed to date, along with the work anticipated going forward supports Class Counsel's lodestar.  The requested amount of attorneys' fees of $12.5 million represents a very modest multiplier of 1.04.

The lodestar analysis is not limited to the initial mathematical calculation of class counsel's base fee.  *See Morales v. City of San Rafael*, 96 F.3d 359, 363-64 (9th Cir. 1996).  Rather, Class Counsel's actual lodestar may be enhanced according to those factors that have not been "subsumed within the initial calculation of hours reasonably expended at a reasonable hourly rate."  *Hensley v. Eckerhart*, 461 U.S. 424, 434 n.9 (1983) (citation omitted); *see also Morales*, 96 F.3d at 364.  In a historical review of numerous class action settlements, the Ninth Circuit found that lodestar multipliers go up to 19.6, with most (83%) falling between 1 and 4, and a bare majority (54%) between 1.5 and 3.  *Vizcaino*, 290 F.3d at 1051 n.6 (citation omitted).

### c.    There Is No Evidence the Fees Sought Are Disproportionate or the Result of Collusion

The Court has a duty to ensure that any fee award in a class action settlement is free of collusion -- *i.e.*, a situation where a Class Counsel accepts a lower class relief in exchange for higher attorneys' fees.  *Bluetooth*, 654 F.3d at 946.  In discharging that duty, the Ninth Circuit has held that district courts must carefully scrutinize class settlements negotiated *prior* to formal class certification to determine whether a class action settlement is the product of collusion among the negotiating parties.  *Id.* at 947. Courts

---

[3] The lodestar figure does not include all time spent preparing final approval and fee papers, nor does it include any time Class Counsel will incur in the future ensuring the proper administration of the Settlement.

must be vigilant not only for explicit collusion, but also for more subtle signs that Class Counsel's self-interest and that of certain Class Members has infected the negotiations. *Id.*

Here, the Court can be assured that there has been no collusion among the parties. First, the Settlement was negotiated *after* class certification. Second, there is no evidence that the fees sought are disproportionate or the result of collusion. Both the lodestar and percentage-of-recovery methods of calculation support the reasonableness of the fees sought. Third, the settlement was reached only after multiple mediation sessions before the Honorable Irma Gonzalez (Ret.), who submitted a declaration to this Court, detailing the spirited and contentious nature of the mediation sessions and the absence of collusion. Finally, the settlement does not allow any "excess" funds to revert to Wells Fargo. The settlement required Wells Fargo to pay the entire $50 million, which, after entry of the preliminary approval order, Wells Fargo deposited into an escrow account. (Alberstone Decl. at ¶ 30.) Moreover, this is not a "claims made" settlement -- none of the money reverts back to Wells Fargo, and thus, there is no benefit to Wells Fargo for low participation.

These facts distinguish this case from the situation in *Bluetooth*, where the Ninth Circuit remanded the matter for further fact finding because Class Members received no monetary compensation, but counsel was amply rewarded. 654 F.3d at 947-950. When, as in this case, the fee award is reasonable, the risk of collusion is significantly narrowed. *Laguna v. Coverall North America, Inc.*, 753 F.3d 918, 925 (9th Cir. 2014) vacated as moot on other grounds 772 F.3d 608 (9th Cir. 2014) (appeal dismissed as moot after parties advised court of settlement; and previously filed opinion vacated). In such cases, district courts need only recognize and balance potentially collusive provisions, such as the reversion to defendants of unclaimed funds, against the other terms of the settlement agreement. *Id.* As explained in *Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998), "it is the settlement taken as a whole, rather than the individual component parts, that must be examined for overall fairness." 150 F.3d at 1026. In light of the significant

monetary and nonmonetary relief to Class Members in the Settlement Agreement, this Court should find that the fees sought are neither disproportionate nor a result of collusion.

### D.   The Court Should Approve the Reimbursement of Costs

The settlement provides for the reimbursement of Class Counsel's litigation expenses up to $1.5 million.  (Settlement Agreement ¶ 4.06.)  Class Counsel has incurred costs in the amount of $1,683,611.83.  Such costs reflected the protracted nature of this case.  The Ninth Circuit allows recovery of pre-settlement litigation costs in the context of class action settlement.  *Staton*, 327 F.3d at 974; *In re Media Vision Tech. Sec. Litig.*, 913 F.Supp. 1362, 1366 (N.D.Cal.1996); *Grays Harbor Adventist Christian Sch. v. Carrier Corp.*, No. 05-05437 RBL, 2008 WL 1901988, at *4 (W.D. Wash. Apr. 24, 2008).

Additionally, the settlement provides for the reimbursement of costs and expenses to the notice and claims administrator up to $3 million.  (Settlement Agreement ¶ 4.05.)  As part of preliminary approval, the Court granted approval for the administrator to begin drawing on this amount to begin the notice and claims process.  (Dkt 258 at ¶ 15.)  Thus far, the administrator has spent $365,038.34 providing notice and anticipates spending approximately $550,000 going forward.  (Azari Decl. ¶ 21.)[4]

As with all parts of the settlement, "[i]t is the settlement taken as a whole, rather than the individual component parts, that must be examined for overall fairness."  *Staton*, 327 F.3d at 952.  Here, even after payment of attorneys' fees and reimbursement of all expenses, Class Members are still receiving more than a full refund of the amount paid for an unlawfully marked-up BPO.  Accordingly, when they payments to Class Members are considered and examined in the context of the length and complexity of this litigation and the number of Class Members to whom notice must be sent and for whom claims must be processed, the amounts spent by both Class Counsel in pre-settlement litigation costs and

---

[4] As noted in Plaintiffs' concurrently filed Motion for Final Approval, at least $2 million in unused funds earmarked for the claims administrator will be distributed to Class Members, along with the agreed upon sum of $33 million, on a *pro rata* basis.

by the administrator are reasonable and fair.

**E.    The Court Should Approve the Incentive Payments to Class Representatives**

The parties agreed that the Court may, at its discretion, grant incentive payments to the Class Representatives, paid out of the Fund, in the amount of $10,000 per Class Representative.  Class Representatives each earned these incentive payments through their efforts on behalf of the Class, over the course of many years.  Moreover, the amount requested is well within the range of incentive payments approved in comparable cases.

**i.    Courts Routinely Approve Incentive Payments**

Trial courts have discretion to approve incentive payments in class actions, and do so routinely. "[I]ncentive awards that are intended to compensate Class Representatives for work undertaken on behalf of a class 'are fairly typical in class action cases.'"  *In re Online DVD-Rental Antitrust Litig.*, 779 F.3d at 943 (quoting *Rodriguez v. West Publishing Corp.*, 563 F.3d 948, 958 (9th Cir. 2009)); *see also*, 4 NEWBERG ON CLASS ACTIONS § 11:38 (4th ed.); MANUAL FOR COMPLEX LITIGATION, § 21.62, n. 971 (4th ed. 2013).  The Ninth Circuit has recognized that because "without a named plaintiff there can be no class action" incentive awards may be necessary to induce participation. *Staton*, 327 F.3d at 976 (quoting  *In re Cont'l Ill. Sec. Litig.*, 962 F.2d 566, 571 (7th Cir.1992)).  This is especially true where, as here, the dollar amount to individual Class Members is not likely to induce participation on its own.

**ii.    Incentive Payments Are Appropriate in This Case**

The Class Representatives here devoted a substantial amount of time and resources to this action, and without their efforts it would not have been possible to obtain such an extraordinary settlement for Class Members.  In awarding incentive payments, "[t]he district court must evaluate their awards individually, using "relevant factors includ[ing] the actions the plaintiff has taken to protect the interests of the class, the degree to which the class has benefitted from those actions, . . . the amount of time and effort the plaintiff expended in pursuing the litigation." *Staton.*, 327 F.3d at 977 (quoting *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir. 1998)); *see also*, *Spicer v. Chicago Bd. Options Exchange,*

1    *Inc.*, 844 F.Supp. 1226, 1267 (N.D. Ill. 1993).

2         Plaintiff Morrison litigated this case for *more than seven years*, and Plaintiffs Bias

3    and Breaux litigated this case for *almost five years*.  (*See* Dkts. 248-5, 248-6, and 248-7.)

4    Further, it is important to remember the nature of this action; these Plaintiffs were

5    financially distressed homeowners who were being taken advantage of by their mortgage

6    loan servicer.  At the core of this case was a dispute about their home.  These Class

7    Representatives were in default under their loan agreements not by choice but due to

8    financial reasons, yet whenever called upon by Class counsel they made time to deal with

9    this litigation, deal with discovery requests, and sit for lengthy depositions, which

10   required them to miss work.  It is indisputable that the Class benefited from their noble

11   efforts.

12              **iii.    The Requested Incentive Payments Are Fair**

13        The requested incentive payments of $10,000 per Class Representative fall squarely

14   within the range of payments approved in comparable cases.  The Ninth Circuit has noted

15   the propriety of a $25,000 incentive payment to a class representative where the

16   circumstances warrant it.  *See Staton*, 327 F.3d at 976 (citing *Cook*, 142 F.3d at 1016)

17   (approving, in the context of a recovery of more than $14 million, an incentive payment of

18   $25,000 to one named plaintiff who "spent hundreds of hours with his attorneys and

19   provided them with `an abundance of information'")).  Additionally, courts in this District

20   and others have likewise approved of incentive payments in excess of $5,000.  *Villegas v.*

21   *J.P. Morgan Chase & Co.*, No. CV 09-00261 SBA EMC, 2012 WL 5878390, at *7 (N.D.

22   Cal. Nov. 21, 2012) (granting $10,000 incentive award in settlement obtained *without*

23   *trial*); *Glass v. UBS Fin. Servs., Inc.*, 2007 WL 221862, at *16 (N.D.Cal. Jan. 26, 2007)

24   (approving payments of $25,000 to each named plaintiff in settlement obtained *without*

25   *trial*); *Van Vranken v. Atlantic Richfield Co.*, 901 F.Supp. 294, 299 (N.D. Cal. 1995)

26   (awarding $50,000 to a lead plaintiff); *Cook v. Niedert*, 142 F.3d 1004, 1016 (7th Cir.

27   1998) (affirming $25,000 incentive award in settlement obtained *without trial*); *In re*

28   *Residential Doors Antitrust Litig.*, No. 94-3744, 1998 WL 151804, at *11 (E.D. Pa. Apr.

2, 1998) (approving $10,000 for each of four Class Representatives in settlement obtained *without trial*); *In re Linerboard Antitrust Litig.*, No. CIV.A. 98-5055, 2004 WL 1221350, at *19 (E.D. Pa. June 2, 2004), amended, No. CIV.A.98-5055, 2004 WL 1240775 (E.D. Pa. June 4, 2004) (approving $25,000 incentive award in settlement obtained *without trial* and citing cases approving amounts from $20,000 – $90,000); *see also* Theodore Eisenberg & Geoffrey P. Miller, *Incentive Awards to Class Action Plaintiffs: An Empirical Study*, 53 UCLA L. REV. 1303, 1308 (2006) (review of 374 opinions in class action settlement published from 1993 to 2002, average award per Class Representative was $15,992).

### iv.   The Class Representatives Did Not Enter In Incentive Agreements Nor Did The Settlement Agreement Condition Incentive Payments on Their Support of the Settlement

Although incentive *payments* are fairly typical and routinely approved, incentive agreements are quite different. While such agreements only bind counsel to seek an incentive payment, such agreements can put Class Counsel and the contracting Class Representative into a position of conflict from day one.  *See, e.g., Rodriguez v. West Publishing Corp.*, 563 F.3d at 959-960.  Unlike in *Rodriguez*, none of the Class Representatives here entered into an incentive agreement with Class Counsel.  Further, the parties did not condition incentive awards on the Class Representatives' support for the settlement, mindful that a conditional incentive award would call into question whether the Class Representatives and their counsel adequately represented the class.  *See, e.g., Radcliffe v. Experian Information Solutions Inc.*, 715 F.3d 1157, 1164-1168 (9th Cir. 2013).  Given the substantial time and effort each Class Representative expended prosecuting this action, the proposed incentive payments are fair and appropriate, and should be approved.

## IV.   CONCLUSION

For the foregoing reasons, this Court should grant Plaintiffs' motion for attorneys' fees, costs, and incentive payments.

1   Dated:  February 14, 2017                    BARON & BUDD, P.C.

2                                          By:   /s/ Mark Pifko

3                                                Mark Pifko

4                                                Daniel Alberstone (SBN 105275)

5                                                Roland Tellis (SBN 186269)
                                                 Mark Pifko (SBN 228412)
6                                                BARON & BUDD, P.C.

7                                                15910 Ventura Boulevard, Suite 1600
                                                 Encino, California  91436
8                                                Telephone:   (818) 839-2333

9                                                Facsimile:    (818) 986-9698

10                                               Marguerite K. Kingsmill (*pro hac vice*)

11                                               mkingsmill@kingsmillriess.com
                                                 Charles B. Colvin (*pro hac vice*)
12                                               ccolvin@kingsmillriess.com

13                                               KINGSMILL RIESS, L.L.C.
                                                 201 St. Charles Avenue, Suite 3300
14                                               New Orleans, LA 70170

15                                               Telephone:  (504) 581-3300
                                                 Facsimile:    (504) 581-3310
16

17                                               Philip F. Cossich, Jr. (*pro hac vice*)

18                                               David A. Parsiola (*pro hac vice*)
                                                 COSSICH, SUMICH,
19                                               PARSIOLA & TAYLOR, L.L.C.

20                                               8397 Highway 23, Suite 100
                                                 Belle Chasse, Louisiana 70037
21                                               Telephone:   (504) 394-9000

22                                               Facsimile:    (504) 394-9110

23                                               Attorneys for Plaintiffs

24                                               LATARA BIAS, ERIC BREAUX,
                                                 and TROY LYNNE MORRISON,
25                                               individually, and on behalf of the

26                                               Certified Class

27

28